PLOTKIN, Judge.
Defendant Crescent Refrigeration, Inc. appeals a trial court judgment awarding plaintiff Southland Plumbing Supply, Inc. $24,327.35. We amend and affirm.

Facts

Crescent Refrigeration, Inc. subcontracted with general contractor R.A. McGuire Construction Co. to do the mechanical work on the International Marine Terminal project in Plaquemines Parish. Crescent then sub-subcontracted the plumbing portion of the project to John B. Patterson. The record indicates that Patterson approached plaintiff Southland Plumbing about supplying materials for the job on credit. Alan Vinturella, secretary-treasurer at Southland, testified that he agreed to open the account only after contacting Brent Driskill, president of Crescent Refrigeration, who agreed to an arrangement whereby Crescent would write all checks to Patterson and Southland jointly. Driskill memorialized this arrangement in a letter to Vinturella, dated February 26, 1982, which stated, in pertinent part, as follows:
We are pleased to confirm our telephone conversation of February 18, 1982. In regards to you furnishing the plumbing materials for Mr. John Patterson to perform the plumbing work on the above project, [sic] Payments will be made each month with in [sic] three days after we receive payment for work performed doing the previous month. Checks will be made jointly to Southland Plumbing Supply, Inc. and John Patterson.
The record contains a statement of Patterson’s account with Southland which shows that between the time of the agreement on February 19, 1982 and March 4, 1983, nine payments were made on the account. The testimony at trial indicates that all those payments were made pursuant to the joint check agreement. The last joint check was made out for $5,944.36, the balance on the account as of February 10, 1983. However, after February 10 and before the payment was posted on March 4, two water heaters, at a total cost of $12,-720, were purchased on the account. That purchase is dated February 22. Vinturella stated at trial that he phoned Driskill before allowing the charge and was assured by Driskill that there was plenty of money left in the contract to pay for the heaters and that everyone would “get out” if they could just finish the project. Vinturella, who stated that he held the heaters at the trucking company until he was assured of payment, said that Driskill asked him to “please release the heaters.”
Thereafter, Patterson was removed from the job, effective April 25, 1983. Prior to the removal, several other purchases had been made on the account with Southland and the balance of the account was $24,-327.35. No joint checks were written to Patterson and Southland after the $5,944.36 payment in February. Southland then brought this action on open account against Crescent only.
At trial, Driskill testified that Patterson never received any payments of any kind after the February payment because of a liquidated damage clause in both the contract between Crescent and Patterson and the contract between McGuire and Patterson. He stated that Crescent lost money on the contract because of Patterson’s actions. Driskill stated that the plumbing portion of the contract was completed after Patterson’s removal by another company, which got “direct pay.”
Only Driskill and Vinturella testified at trial. After considering all the evidence, the trial judge found in favor of Southland, stating as follows:
*773 It is the opinion of this Court that the defendant agreed to guarantee payment, which satisfies the consent element of pre-revision article 1979 of the Louisiana Civil Code. Immediately prior to delivery, plaintiff had a zero balance with Patterson and refused to deliver the equipment in question, until assured by the defendant that delivery would result in payment and non-delivery would result in his defendant’s inability to complete his contract. It was not until a personal phone call and personal assurance from the defendant, that plaintiff agreed to effect delivery of the equipment. The testimony indicates that the plaintiff would not have delivered the property in question were it not for the assurances given by the defendant. Once the defendant agreed to guarantee payment, he consented to be bound, and therefore there was a meeting of the minds.
The trial judge’s comments reveal that his decision was based upon his finding that all four of the requisites for a valid contract enumerated in former La.C.C. art. 1979—parties legally capable of contracting; their consent legally given; a certain object, which forms the matter of agreement, and a lawful purpose—had been met. Although the record indicates that all four of those requisites were indeed present, under the law at the time these events occurred in 1982 and 1983, those requirements were nonetheless insufficient to form a contract of suretyship, or guarantee.
Suretyship is governed now and was governed in 1982 and 1983 by La.C.C. art. 3035 et seq. It is defined by La.C.C. art. 3035 as “an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not.” This definition describes the contract which Southland is seeking to establish in the instant case exactly. However, in order for a suretyship contract to be established, two requirements in addition to the four enumerated in La.C.C. art. 1979 must be proven. La.C.C. art. 3039 states that “[suretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract.” Additionally, the rule in effect in 1982 and 1983 stated that parole evidence is not admissible “[t]o prove any promise to pay the debt of a third person.” La.C.C. art. 2278(3). These two provisions, taken together, resulted in a jurisprudential rule that a promise to pay the debt of a third person, i.e. a suretyship or guarantee, must be express, i.e. clear and explicit, and in writing. Kaplan v. University Lake Corp., 381 So.2d 385, on rehearing, 381 So.2d 385 (La.1980), W.H. Ward Lumber Co., Inc. v. International City Bank & Trust Co., 347 So.2d 322 (La.App. 4th Cir.1977).
However, the jurisprudence in the area has established an exception to the rule that parole evidence is inadmissible to prove the debt of a third person when the motivation for the promise is pecuniary or business-related or where the guarantee is made for extension of credit. Powell Lumber Co. v. AFCO Corp., 288 So.2d 697, 700 (La.App. 3d Cir.1974); Burke v. Elmer Candy Co., 251 So.2d 786, 787 (La.App. 1st Cir.1971); Rube v. Pacific Ins. Co. of New York, 131 So.2d 240, 245 (La.App. 4th Cir.1961). We are satisfied that the facts of this case fall within the exception; therefore, we will consider the the parole evidence in deciding the case.
Therefore, the only issue before this court is whether Crescent’s alleged promise to pay Patterson’s debt to Southland was express. We find that the original agreement between the two parties did not constitute an express promise by Crescent to pay Patterson’s debts. Although Driskill memorialized the joint-checking agreement in the letter quoted above, none of the language in that letter can be interpreted as a clear, explicit promise on the part of Crescent to be responsible for the account should Patterson fail to pay. The letter merely evidences Crescent’s willingness to accommodate Southland’s attempts to assure payment from Patterson by making out the checks in both names so that Patterson would have to pay for the supplies before he spent any money coming to him for the project. There is certainly nothing in the letter which obligates Crescent to *774 pay money directly to Southland when no money is due and owing to Patterson.
However, we view the telephone conversation between Vinturella and Driskill prior to the release of the heaters differently. The record establishes that at that time, Driskill stated specifically that there was plenty of money remaining in the contract for everyone involved in the project to “get out.” Vinturella testified that Driskill then asked him to “please release the heaters.” We find that these two statements, coupled with the history of the relationship between the parties, were sufficient to constitute an express assurance that Crescent would be responsible for paying for those heaters should Patterson fail to pay. Therefore, Driskill’s oral assurances to Vinturella established the existence of a primary contract for the purchase of the water heaters only. Southland is entitled to recover the total cost of the heaters, $12,720, from Crescent.
Since the original agreement between the parties was insufficient to establish a contract of surety, plaintiff Southland Plumbing Supply, Inc. is not entitled to recover the balance of the account from defendant, Crescent Refrigeration. The trial court’s judgment is amended to award only the $12,720 total cost of the water heaters to the plaintiff. It is affirmed in all other respects.
AFFIRMED AND AMENDED.