United States Court of Appeals,

Fifth Circuit.

No. 93-3021.

UNITED STATES of America, Plaintiff-Appellant,

v.

PARK TOWERS, INC., et al., Defendants,

Charles I. Denechaud, III and the Roman Catholic Church of Archdiocese of New Orleans, Defendants-Appellees.

Dec. 8, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, REAVLEY and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:

The United States initiated suit to reduce its tax assessments against Park Towers, Inc. ("Park Towers") to judgment and to foreclose on federal tax liens against that corporation's interest in the assets of the Park Tower Apartments Partnership ("The Louisiana Partnership"). The Archdiocese of New Orleans claimed to be a creditor of the Louisiana Partnership, however, and thus to enjoy priority over the United States, a creditor only of the general partner Park Towers. The district court held that the United States was the primary lienholder entitled to Park Towers' distributive share of the assets of the Partnership, but it further held that the Archdiocese was a creditor of the Partnership entitled to be paid in preference to creditors of individual partners. The United States appeals and now prevails.

BACKGROUND

*Incorporation of Park Towers, Inc.*

In 1964 state Senator Michael O'Keefe and Ben Bridgeman approached the Archbishop of New Orleans about property owned by the Archdiocese in the City of New Orleans. O'Keefe and Bridgeman wanted to build an apartment complex on a site that they hoped would be subsidized by the U.S. Department of Housing and Urban Development ("HUD"). A tentative agreement was reached whereby the Archdiocese would sell the property to them for $1,100,000.

Park Towers was incorporated in Louisiana in September 1965 to obtain and later develop and manage the land which was located in New Orleans. Although the transfer documents recited that the real estate was sold to Park Towers for consideration totaling $1,100,000, no money changed hands and no mortgages or promissory notes were recorded or issued. Cash advances were also presumably made to the corporation.

The Archdiocese offers no explanation for these unusual commercial transactions, but we note that HUD regulations require that property which is security for a mortgage be free and clear of all liens other than the HUD mortgage. 24 C.F.R. § 207.18 (1992). A HUD approved mortgage must also contain a covenant by the mortgagor against creation of liens against the property that are superior or inferior to the HUD mortgage. 24 C.F.R. § 207.9 (1992).

*Formation of the Louisiana Partnership*

On November 16, 1973, Park Towers entered into an agreement for Multi-Family Housing Projects with the Federal Housing Administration of HUD to obtain federally insured financing in the amount of $9,753,000 for construction of the apartments. The funds were borrowed from the Bank of New Orleans and Trust Company, evidenced by a promissory note and mortgage assigned to the Federal National Mortgage Association. The mortgage was assigned to the Secretary of HUD on August 6, 1974. The Park Esplanade Apartments were constructed on the land obtained from the Archdiocese.

In 1975, Park Towers formed the Louisiana Partnership which was debt free and unconnected with the original sale and transfer of land by the Archdiocese. Park Towers immediately contributed the property it had acquired from the Archdiocese to the Louisiana Partnership at its formation. HUD's requirements that the mortgaged property be free of other liens and obligations appeared to be satisfied.

Park Towers was designated the general partner when the Louisiana Partnership was originally formed, holding a 91 per cent interest. This interest was later reduced to 72 per cent by subsequent amendments to the articles of partnership.

*Formation of Park Esplanade, Inc.*

The Louisiana Partnership, in order to stay in compliance with HUD requirements, proposed an arrangement where an entity other than the Partnership would sign a promissory note of indebtedness to the Archdiocese. Park Esplanade, Inc., was apparently created to further this task, and a note and agreement evidencing the debt to the Archdiocese was executed. Park Esplanade and the Archdiocese entered into an unrecorded agreement on July 12, 1978, which acknowledged the Archdiocese's loan, including the land transfers and monetary advances plus interest. The note was secured by Michael O'Keefe and Ben Bridgeman as accommodation endorsers and by the pledge of 160 shares of Park Towers stock.

*HUD Foreclosure action and subsequent sale of the property*

The Louisiana Partnership defaulted on its payments to HUD in 1982. The United States brought a foreclosure action on behalf of HUD in November 1982 against the Louisiana Partnership and its general partners. The Louisiana Partnership found a purchaser for the developed property, however, and HUD agreed to accept satisfaction of the mortgage claim through the sale. The foreclosure action was dismissed.

On March 16, 1984, the Louisiana Partnership conveyed the land and improvements to the buyer, a Boston investment group which formed Park Esplanade Limited Partnership to acquire the property. The property was purchased subject to the balance on the HUD mortgage and 25 promissory notes in the total amount of $8,500,000 payable to the order of the Louisiana Partnership over a period of years. The escrow agreement is the only agreement of all the sale-related documents that refers to the Archdiocese. The agreement explicitly refers to the Archdiocese as a creditor of *Park Towers, Inc.,* however, and not as a creditor of the Louisiana Partnership. The Archdiocese was also a party to a private agreement between the Archdiocese and five parties known collectively as "Park Towers,"[1] which was executed two months prior to the closing of the sale and recites that the Archdiocese is a creditor of "Park Towers."

Following the sale, on June 12, 1984, a Fourth Amendment to the Articles of the Louisiana

---

[1]The five parties were Park Towers, Park Esplanade, the Louisiana Partnership, Michael O'Keefe and Ben Bridgeman.

Partnership was executed on behalf of the Partnership. This Amendment was designed "to reflect a restructure in the method of distribution of cash from sale of the property of the Partnership with regard to certain partners." The Amendment recited that creditors of the Louisiana Partnership were entitled to priority over creditors of individual partners and sought to change the priority of distribution of the proceeds from the sale of the Partnership's property to allow outstanding debt of Park Towers to be paid. The amendment further stated that "[a]ll distributions received by the General Partners pursuant to this Article ... shall be used to reduce the debt owed by Park Towers, Inc., a general partner, to the New Orleans Catholic Archdiocese." Park Towers' distributive share of payments on the promissory notes from the Park Esplanade Limited Partnership was allocated to the Archdiocese, evidenced by the distribution schedule of payments on the notes.

*Federal tax liens against Park Towers*

Park Towers, a general partner of the Louisiana Partnership, realized a capital gain in 1984 as a consequence of the sale of the apartment complex. Park Towers also realized a distributive share of interest from the promissory notes in 1985 and 1986. The United States assessed the amount of federal corporate income tax Park Towers' owed due to the realization of this income and demanded payment. Park Towers failed to pay and federal tax liens arose which were recorded in the mortgage records of Orleans Parish on March 18, 1986, September 22, 1986, and November 24, 1987.

*Ensuing litigation over priority of claims*

The United States brought suit to foreclose its liens on Park Towers' interest in the Louisiana Partnership. Specifically, the United States sought satisfaction of its federal tax claim from Park Towers' distributive share of the payments on the notes from the Park Esplanade Limited Partnership to the Louisiana Partnership. The promissory notes were sold while the case was pending for $2,590,000 and the proceeds of that sale were deposited into the registry of the district court.

The Archdiocese served the United States with a motion to dismiss, or alternatively, a motion for summary judgment, maintaining that the United States could not enforce its lien against the Louisiana Partnership assets. The Archdiocese claimed to be a secured creditor entitled to priority over the United States' claim. The Archdiocese also argued that upon completion of the sale of the

Louisiana Partnership's assets, the Archdiocese was a creditor of the Louisiana Partnership and thus was entitled to satisfaction of its claim prior to the claim of the United States, a creditor of only a general partner in the Louisiana Partnership.

The United States also moved for summary judgment on the ground that it was entitled to enforce its liens against Park Towers' distributive share of the Louisiana Partnership assets. The United States claimed that the Archdiocese was only a creditor of the general partner, Park Towers, and not a creditor of the Louisiana Partnership. Because the United States had timely filed notices of a federal lien against the Corporation (and the Archdiocese had no recorded interest), the United States argued its claim should prevail as a matter of law.

The district court granted both motions in part. The United States was found to be the primary lienholder entitled to *Park Towers, Inc.'s* distributive share of the assets of the Park Towers Apartments Partnership. The Archdiocese was found to be a creditor of the *Louisiana Partnership,* entitled to be paid in preference to creditors of individual partners. Although the district court agreed that the Archdiocese's claims were unrecorded, it found that the "the documents under private signature acknowledging the debt to the Archdiocese must be considered binding." The decision effectively awarded the remaining assets to the Archdiocese. The United States appeals.

DISCUSSION

A.

The United States argues that the district court erred in granting summary judgment for the Archdiocese and holding that it was a creditor of the Louisiana Partnership. In reviewing a summary judgment, we review the record and the pleadings independently, viewing fact questions in the light most favorable to the nonmovant and considering legal questions *de novo. Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

The district court correctly stated that creditors of a partnership must be paid in preference to creditors of partners under Louisiana law. LA.CIV.CODE ANN. art. 2832 (West Supp.1993). The Archdiocese was not, however, a creditor of the Louisiana Partnership. The record simply does not support the Archdiocese's contention that the various documents it submitted "unambiguously"

establish it as a Partnership creditor.

Louisiana law requires that a promise to pay the debt of a third person must be explicit, clear, and in writing. *See, e.g., Southland Plumbing Supply, Inc. v. Crescent Refrigeration, Inc.,* 542 So.2d 771, 773 (La.App. 4th Cir.1989). *See also* LA.CIV.CODE ANN. art. 1821 (West 1987). (In order to enforce the undertaking of an obligation against a third person, the agreement must be in writing.) Therefore, the Archdiocese must establish that the Louisiana Partnership clearly assumed the debt that was apparently owed by Park Towers or Park Esplanade. Although the Archdiocese points to several documents that supposedly evidence the Partnership's undertaking of the debt owed the Archdiocese, not one explicitly refers to the Louisiana Partnership.

For example, even though conveyance documents recite that consideration of $1,100,000 was paid by Park Towers for the land obtained from the Archdiocese, it is undisputed that no cash changed hands. An attempt to obtain credit for the land was made on July 12, 1978, when an entity known as Park Esplanade executed a promissory note to the Archdiocese which would avoid non-compliance with HUD while acknowledging the Archdiocese's loan. Contrary to the Archdiocese's position that they are undoubtedly a creditor of the Partnership, it appears the developers deliberately refrained from acknowledging the Archdiocese debt as a partnership debt. Accordingly, the Park Esplanade note, which was issued by Park Esplanade and not by the Partnership, served to keep the Partnership "debt free" while evidencing the money owed to the Archdiocese.

The Archdiocese points to other documents which it argues supports its position, but these documents are also unconvincing. The escrow agreement between the Louisiana Partnership and the Park Esplanade Limited Partnership refers to the Archdiocese as a creditor of *Park Towers, Inc.* The Fourth Amendment, executed on June 12, 1984, and the schedule of distribution similarly fail to identify the Archdiocese as a creditor of the Partnership. The Archdiocese also points to the deposition of Joseph Ingraham, executive director of the department of financial services for the Archdiocese in Louisiana. Ingraham stated that the Archdiocese was a Partnership creditor because "all of these other parties which make up the Park Towers Apartments Project, acknowledged the

debt to the Archdiocese." This does not further the Archdiocese's claim, however, since the "Park Towers Project" is not a recognized legal entity.[2] The Archdiocese seems to argue that we should find an obligation to this entity, which is never sufficiently defined, to somehow convert the Archdiocese's loan into a Partnership obligation. The conversion is as impossible as the argument.

The Archdiocese argues in its brief that an "effort to protect the Archdiocese during the loan application process did not relieve the Partnership from liability for the indebtedness due the Archdiocese." Although we agree this "effort to protect" did not relieve everyone from an indebtedness to the Archdiocese, it did compromise the Archdiocese's ability to claim the status of a Partnership creditor without evidence of that status. We must conclude that the Archdiocese is not a creditor of the Louisiana Partnership.

B.

We agree with the district court that the United States is the primary lienholder entitled to Park Towers' distributive share of the assets of the Louisiana Partnership. Federal tax liens were duly recorded on March 18, 1986, September 22, 1986, and November 24, 1987 in the mortgage records of Orleans Parish. The ability of the United States to issue a federal tax lien is exceedingly broad and undeniably reaches Park Towers' interest in the Partnership. *See United States v. National Bank of Commerce,* 472 U.S. 713, 719-20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). Under 26 U.S.C. § 6321 the United States has the power to impose a lien for unpaid taxes upon a delinquent taxpayer's property and rights to property. Furthermore, the Government may enforce the tax lien against any property of the delinquent taxpayer or any property in which the taxpayer has any right, title, or interest. 26 U.S.C. § 7403.

The definition of underlying property interests is a question of state law, but the consequences which subsequently attach to those interests is a matter of federal law. *E.g., United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). Under Louisiana law, a partner's interest in a partnership is a property interest which is therefore subject to

---

[2]The promissory note dated July 12, 1978, made by Park Esplanade states that the Archdiocese is a creditor of the "Park Towers Project."

creditors' claims. *See* LA.CIV.CODE ANN. art. 2819 (West Supp.1993). Therefore, Park Towers had a property interest in the Partnership subject to the tax lien which was the only outstanding recorded claim against the property.

## C.

Because the United States properly recorded notices of its tax liens against Park Towers, the Archdiocese cannot get ahead of the United States for any claim it may have. This is in accordance with Louisiana law which dictates that contracts or liens pertaining to property must be recorded to render such contracts effective against third parties. *See, e.g., Watterson v. Magee,* 498 So.2d 30, 31-32 (La.App. 1st Cir.1986); *Craftsmen Homes, Inc. v. Hollywood Door Co.,* 583 So.2d 879, 882 (La.App. 1st Cir.1991). Although the Archdiocese may have a valid claim against Park Towers for the unpaid price of the property and subsequent advances, that claim cannot prevail against the United States' duly recorded lien. REVERSED IN PART and AFFIRMED IN PART; Judgment rendered for the United States.