630 So.2d 327 (1994)
NESSER, KING & LeBLANC
v.
LAREDO MARINE SERVICES, INC., et al.
No. 93-CA-1222.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1994.
Rehearing Denied February 10, 1994.
Henry A. King, Jeffrey A. Mitchell, Nesser, King & LeBlanc, New Orleans, for Nesser, King & LeBlanc.
Steven J. Koehler, Leefe, Gibbs & Koehler, Metairie, for Robert R. Springob.
Before BYRNES and JONES, JJ., and JOHN A. DIXON, Jr., J. Pro Tem.
JOHN A. DIXON, Jr., Judge Pro Tem.
Plaintiff, the law firm of Nesser, King & LeBlanc (NK & L) sued Laredo Marine Services, Inc. and Robert R. Springob to collect fees for legal services rendered. The fees, totalling $31,392.27, were identified in five monthly invoices sent to Laredo Marine from March to July of 1990. The trial court rendered judgment in favor of NK & L and against Laredo Marine for the total amount of the outstanding invoices, plus interest and ten percent attorney's fees under the Louisiana Open Account Statute, La.R.S. 9:2781. NK & L appeals the portion of the judgment dismissing its claim against Springob. We reverse.
After NK & L appealed the judgment, Laredo Marine filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. Under § 362 of the Bankruptcy Code action by NK & L to enforce its judgment against Laredo Marine has been stayed.

*328 FACTS:

Laredo Marine is a Texas Corporation. In 1986, when NK & L was retained to represent Laredo Marine in a corporate action (the Degeyter action); Robert R. Springob and his family owned 60% of Laredo Marine. NK & L's relationship with Mr. Springob's various companies began in 1986 and ended when this dispute erupted in the early part of 1991. Over the 4 or 5 years, NK & L represented Springob's companies in 6 or 7 fairly significant disputes. In October 1986, after evaluating the Degeyter matter, Henry King of NK & L sent a letter to Springob, as president of Laredo Marine, informing him that NK & L's cost to represent Laredo Marine in the Degeyter action could easily exceed $25,000.
In December 1986 NK & L filed a lawsuit on behalf of Laredo Marine seeking over one million dollars from various defendants in the Degeyter action. One month later, in January 1987, Laredo Marine filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Texas. King testified that Springob telephoned him a few days before the bankruptcy filing to tell him that he (Springob) had paid Laredo Marine's outstanding bills from NK & L except for a small ($522) invoice because Springob wanted NK & L to have a pre-bankruptcy petition debt so that NK & L could serve on the creditors committee in the bankruptcy. At this time, King testified, he told Springob that they anticipated an enormous amount of activity in preparing the case for trial.
Also in January 1987, King claims, he received an oral promise from Springob to personally pay all future fees and costs incurred in connection with NK & L's representation in the Degeyter action. There is nothing in writing to confirm this promise. When questioned about an oral promise made by Springob, King testified:
Yes, he did, to pay [the fees] directly. And by that I mean if [Laredo Marine] can't pay, he will pay. It waswe were looking at a very large lawsuit. And he makes direct assurances that he would pay the bill.
King testified that NK & L needed this assurance, and Springob made the assurance to him in unequivocal terms.
When asked whether he ever made any promise that he would personally pay the bills for Laredo Marine in connection with the Degeyter action, Springob could only testify:
I don't recall that I did. I made the statement that the bills would be paid. And there was never any reason to believe that Laredo Marine would not have enough money to pay the amount of money involved, which was something around twenty-five, $30,000.
In 1988 the bankruptcy court in Texas approved a plan for reorganization for Laredo Marine. NK & L's bills were paid until 1990. Apparently after a judgment adverse to Laredo Marine was rendered in the Degeyter action after the trial in April 1990, NK & L received no more payments from Laredo Marine. NK & L was paid approximately $50,000 for the Degeyter action. After the March-July 1990 invoices amounting to over $31,000 became due in 30 days, King said they communicated with Springob by telephone and by written correspondence.
In March 1991 King sent a letter to Springob as president of Laredo Construction, Inc. proposing that Springob sign an attached promissory note to personally pay Laredo Marine's outstanding legal fees in an installment plan. King explained that the promissory note was for Springob instead of Laredo Marine because Springob had told him "many times many years previously" that he would pay the invoices incurred in the Degeyter matter. Springob testified that he gave no response to the note, explaining:
... at the time that you [King] sent [the note] our relationship had deteriorated to such an extent that Ithere wasn't any doubt in my mind exactly what you were trying to do.... And I am not sure at the time if I was prepared to pay you anything anyway.
When Springob failed to respond to King's letter, NK & L made formal demand for payment pursuant to the Louisiana Open Account Statute, and then later filed the instant lawsuit against Laredo Marine and Springob.
*329 The matter was heard by a judge who rendered oral reasons for judgment at the end of the trial. The trial consisted of testimony from King and Springob and documentary exhibits. The trial judge believed the dispute was controlled by La.C.C. art. 3038 on suretyship and that with no written promise by Springob to pay the debt of a third person, he could not hold Springob personally liable to NK & L. He found contradictory testimony on whether Springob did promise to pay NK & L personally, but, even if Springob had made such a promise, the trial judge did not believe such an intention would continue from January 1987 through 1990.

ANALYSIS:
NK & L argues in this appeal that the trial court erred in relying upon La.C.C. art. 3038 to conclude that Springob was not personally liable for the outstanding attorney's fees. NK & L claims, as it did in the trial court, that the case does not involve suretyship. Rather, NK & L argues, instead of acting as a surety for Laredo Marine's debt, Springob promised to pay the debt as a primary obligation. As such, the promise would not require proof by written instrument but must be proved by at least one witness and other corroborating circumstances. La.C.C. art. 1846.
We agree with NK & L that suretyship does not control in this situation. If a promisor unconditionally obligates himself to pay the debt of another, he becomes primarily responsible for the debt. This promise does not create a suretyship and can be proved with parole evidence. Rice, Fowler, Kingsmill, Vance & Booth v. J.A.R., Inc. and Joseph Rugare, 1993 WL 255135 C.A. No. 92-3298 (E.D.La.1993), citing Schloegel v. New Orleans Disposal Service, 261 So.2d 108, 109 (La.App. 4th Cir.1972). The jurisprudence, as well as the record in this case, supports NK & L's claim that Springob promised to be personally responsible for Laredo Marine's attorney's fees, and that he acted as a primary obligor.
Smith v. Anderson, 517 So.2d 926 (La.App. 3rd Cir.1987) supports NK & L's position. In Smith, by granting summary judgment in favor of an attorney who sought collection of his fee from the president of a corporation for legal services provided to the corporation, the court concluded that it was reasonable to believe that the attorney would not represent a client he knew was encountering difficulties satisfying its obligations as they came due, without some assurance of being compensated. The facts established, the court found, that the president as the sole owner of the corporation was sufficiently financially interested and motivated to undertake primary liability.
While Springob was only a 60% shareholder of Laredo Marine, the record indicates that the 40% shareholder was not active in the company, was not a director, and did not receive a salary or dividends. Ultimately, Springob purchased the 40% share after this lawsuit began. Springob, on the other hand, was the president of the company and the only person NK & L ever dealt withhe was, for all intents and purposes, the owner of the company. Moreover, NK & L had no agreement with anyone other than Springob. That Springob testified in this case, essentially denying that he had promised to assume personal responsibility of Laredo Marine's attorney's fees, is an insufficient reason to distinguish Smith, where the company president apparently did not controvert the attorney's motion for summary judgment.
Similarly, in Rice, Fowler, supra, the court concluded that an individual, in his individual capacity, unconditionally promised to pay attorney's fees rendered on behalf of himself and his company. Although, unlike the instant case, the individual was a party to the action for which the attorney's fees were incurred, the court's findingthat the uncontested testimony was that the individual promised to pay all legal fees regardless of whether they represented services rendered specifically for the company or himself or bothwas not dependent on whether the individual was named in the lawsuit for which the fees were incurred. Finally, as in the instant case, the promise to pay in Rice, Fowler was made soon after the attorney's representation began.
King's testimony about Springob's promise to him is unequivocal; Springob's denial is vague. The circumstances surrounding the *330 promise, that is Laredo Marine's impending bankruptcy and Springob's controlling position in Laredo Marine, tend to indicate that Springob, and only Springob, would have made an assurance to King to personally pay the fees. That Laredo Marine may have paid future invoices to NK & L is irrelevant there is no evidence to suggest that Springob intended his promise to lapse before the Degeyter action had been resolved.
NK & L further argues that the trial judge erred in excluding testimony and documents regarding Laredo Marine's Chapter 11 bankruptcy proceeding which would corroborate King's testimony of an oral promise by Springob to assume personal responsibility for Laredo Marine's attorney's fees. The gist of the testimony and documents filed in the bankruptcy action were proffered.
NK & L argues that the proffered items establish that Laredo Marine made no provision in its plan of reorganization to pay NK & L's fees incurred in the Degeyter action. Consequently, argues NK & L, Laredo Marine's payment of NK & L invoices during the course of the bankruptcy without having sought authority in the bankruptcy court to pay the fees proves that Springob undertook personal liability to NK & L. We agree.
A review of the record shows that throughout the trial, the trial judge refused to admit into evidence documents pertaining to the bankruptcy to show that Laredo Marine made no provision for the payment of NK & L's fees in the Degeyter action either during the Chapter 11 proceeding or afterwards in its plan of reorganization.
Essentially, we find that all of the judge's rulings excluding evidence about Laredo Marine's bankruptcy were erroneous. Having reviewed this evidence, we believe that NK & L's theory that Springob did not disclose to the bankruptcy court about NK & L's fees because he intended to pay the debt himself is reasonable. Nor can we imagine any other reason why there would be such an obvious omission from the bankruptcy documents. The documents show that all parties involved believed that the Degeyter action would be successful. We find it unusual that no provision discussed payment to the attorneys representing the debtor, unless, of course, the debtor was not responsible for the payments. The circumstances surrounding the bankruptcy and the lack of any provision regarding NK & L's attorney's fees serves to corroborate King's testimony that Springob promised to personally pay the attorney's fees through the conclusion of the action.
Accordingly, the portion of the judgment of the trial court dismissing NK & L's claim against Springob is reversed. Judgment is rendered in favor of NK & L and against Springob for $31,392.27, plus legal interest, as provided under La.C.C. art. 2000, accruing 30 days from the date of NK & L's invoices until paid, plus 10% attorney's fees on the principal and interest. All costs of this appeal are assessed against Springob.
REVERSED.