643 So.2d 339 (1994)
Vaden Jackson CARNEY, III and Diane Williams Carney, Plaintiffs-Appellants,
v.
William R. BOLES, Defendant-Appellee.
No. 25905-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1994.
*340 Kneipp & Hastings by E. Eugene Hastings, Donald L. Kneipp, Monroe, for appellants.
Boles, Boles & Ryan by L. Scott Patton, Monroe, for appellee.
Before MARVIN, SEXTON, LINDSAY and WILLIAMS, JJ., and PRICE, J. Pro Tem.
SEXTON, Judge.
Plaintiffs, Vaden Jackson Carney, III and his wife, Diane Williams Carney ("Carneys"), appeal a jury verdict rejecting their demand to enforce a guaranty agreement against defendant, William R. Boles, wherein Boles guaranteed each of them a full year's salary if they were terminated from their employment as bank officers of First City Savings and Loan Association in Monroe, Louisiana. The jury found that although the plaintiffs were terminated from their employment at First City, Boles was not liable for the severance pay. For the reasons that follow, we reverse.
In 1987, William Boles recruited Jack and Diane Carney to come to work at First City *341 Savings and Loan Association ("First City"). Boles was a major shareholder of First City. At the time Boles approached them, both Carneys were employed as officers at different banks. To entice them into leaving their relatively secure positions, the Carneys received a substantial salary raise from First City. Nevertheless, aware that the savings and loan was in financial trouble, the Carneys requested and received a three-year employment contract which provided that they would receive, among other things, one year's salary if either or both of them were terminated from their employment with First City without cause before the term of the contract expired. Specifically, Section 8.4 of the contract stated:
8.4 If Jack Carney or Diane Carney is terminated by First City for any reason other than willful misconduct, then in any such event, Jack Carney or Diane Carney shall be paid as additional compensation under this Agreement, an amount equal to the compensation he or she would have been entitled to receive for one full year at the rate of compensation effective as of the date of termination.
(Emphasis added.)
In a separate contract, Boles gave Mr. and Mrs. Carney a similar personal guarantee.
As president and chief executive officer ("CEO") and senior vice president and commercial loan officer of First City, respectively, Jack and Diane Carney's first task was to determine the financial condition of the bank. It turned out to be much worse than anticipated. A large infusion of capital was needed to make the bank solvent. Various unsuccessful attempts were made by Boles to raise additional capital or sell the institution in order to save First City. By the summer of 1989, however, it became apparent that the Federal Home Loan Bank Board would take control of First City. At this time, the Carneys requested and received written permission from Boles to seek employment elsewhere without affecting the terms of the contract.
On August 3, 1989, the Federal Home Loan Bank Board passed Resolution No. 89-2195 appointing the Federal Savings & Loan Insurance Corporation ("FSLIC") as sole receiver for First City Savings Bank. This resolution also terminated "every employment contract between First City and its officers and employees." On the same day, by separate resolution, the Federal Home Loan Bank Board also appointed the FSLIC as conservator of First City. The receiver took possession of First City Savings Bank on August 7, 1989. A new institution, First City Federal Savings Bank ("First City Federal") was created and the assets of First City were transferred to the new entity. On that day, Mr. Frank Hardin, managing agent of FSLIC, sent the Carneys a letter informing them that their employment contract was terminated by operation of law or bank board resolution as of August 3, 1989 by appointment of the receiver, and that the conservator of the newly formed First City Federal Savings Bank would like to retain them in the same positions with the new bank that they had held with First City. The Carneys accepted the conservator's offer and, consequently, continued to be employed without interruption in working time or pay.
Two days later, on August 9, 1989, Frank Hardin sent the Carneys a confirmation letter rehiring them under most of the same terms of the prior employment contract, except on a month-to-month basis, rather than the guaranteed term of the previous contract. The bank would no longer pay the Carneys' country club dues, but it appears that they were given a slight raise to compensate for the loss of that fringe benefit.
During the period prior to the takeover by the FSLIC and a few weeks subsequent thereto, the Carneys communicated with Boles. Boles testified that he mentioned to the Carneys the possibility of working for a bank in Monroe. He testified that when it was apparent the bank would fail, he consulted with George Campbell of First American Bank in Monroe, another bank in which Boles had an interest, about employing the Carneys. He claims that to avoid paying the guaranty he would have given the Carneys a job if they needed it. Boles admitted, however, that he never actually offered the Carneys another job. In a conversation with Boles shortly after the takeover, the Carneys requested a severance package from Boles. *342 Boles refused on the grounds that the Carneys were still employed at the same job. Suit to enforce the guaranty was filed shortly thereafter.
The matter was tried before a jury. Interestingly, the jury found that the Carneys had been terminated from the employment with First City, but that Boles had not failed to perform his end of the bargain under the guaranty contract. The Carneys have appealed, asserting two assignments of error.
Appellants' first assignment of error, which involves three subparts, revolves around the application of LSA-C.C. Art. 2749 and its jurisprudential interpretation regarding damages for wrongful discharge. Appellants' second assignment of error is that the jury erred in finding that Boles did not breach his obligation under the guaranty contract.
Indeed, both appellants and appellee rely heavily on LSA-C.C. Art. 2749 and its interpretative jurisprudence. LSA-C.C. Art. 2749 states:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
Appellants cite Andrepont v. Lake Charles Harbor and Terminal District, 602 So.2d 704 (La.1992), for the proposition that, under Art. 2749, the Carneys had no duty to mitigate their damages. Consequently, they argue, the court's refusal to grant their motions to exclude all evidence of their subsequent employment with First City Federal and the court's failure to instruct the jury that their subsequent employment had no bearing on their right to recover against Boles, was error.
On the other hand, appellee argues that Art. 2749 supports his position because the Carneys were never "sent away" as required by that article. He submits that because the Carneys continued their employment uninterrupted throughout the period from private ownership to FSLIC/FDIC control, they were never sent away, and hence, they were not entitled to the benefit of the guaranty.
We think that both parties' reliance on LSA-C.C. Art. 2749 is misplaced. Boles' personal guarantee is a separate contract from the employment contract entered into between the Carneys and First City. The Carneys are seeking to recover from Boles pursuant to this contract of guaranty, not the original employment contract with First City. The question presented is whether the guaranty contract is enforceable. The obligation to pay one year's salary in the guaranty contract involves the question of whether the Carneys were terminated from their employment, but does not entail the question of whether they were "sent away" by their employer within the meaning of LSA-C.C. Art. 2749.
Although appellees concede that the employment contract was modified from a guaranteed term (with over one year remaining) to a month-to-month contract, they contend that the Carneys' employment was never terminated. They argue that because the Carneys ultimately remained with the FDIC at the same location for some time past the term of the original employment contract, the requirements of the contract were met.
This argument is without merit. The employment contract was terminated by the Federal Home Loan Bank Board resolution. At that moment, all of the Carneys' rights under that contract, including the right of enforcement of the severance clause (Section 8.4) against First City, came to an end by virtue of federal law. The fact that the managing agent for the FSLIC decided that it was in the best interest of the new First City Federal to rehire the Carneys does not eliminate the fact that the contract by which the Carneys were employed by First City was dissolved and their employment with that institution was terminated. Boles had nothing to do with the rehiring of the Carneys. Nor did Boles assign his rights under the contract to FSLIC. Therefore, we conclude that the jury's finding that the Carneys were terminated from their employment is not clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
*343 The jury found that Boles did not fail to perform his obligations under the contract. The Carneys made demand for severance pay from Boles pursuant to the guaranty contract shortly after their employment with First City was terminated. Boles argues on appeal that he satisfied the obligations under the guaranty by means of First City's successor's payment of the salary and benefits provided in the original employment contract. Thus, he argues, since the principal obligation was satisfied, the guaranty was satisfied.
This implies, and appellee has previously argued, that the obligation of Boles to pay the Carneys was an accessory obligation or suretyship. In Louisiana, a contract of "guaranty" is generally considered as equivalent to a suretyship if the requirements of suretyship are met. Ball Marketing Enterprise v. Rainbow Tomato Company, 340 So.2d 700 (La.App. 3d Cir.1976). Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. LSA-C.C. Art. 3035. A suretyship may be established for any lawful obligation. With respect to the suretyship, that cause is the principal obligation. LSA-C.C. Art. 3036. The principal obligation may be subject to a term or condition. LSA-C.C. Art. 3036. Suretyship must be express and in writing. LSA-C.C. Art. 3038. The surety's defenses are those of the creditor except lack of capacity or bankruptcy of the principal obligor. LSA-C.C. Art. 3046.
In the instant case, Boles personally guaranteed in writing the provision of the employment contract regarding severance pay. We note, however, that Boles did not guarantee the severance pay to the Carneys upon the failure of First City to pay the severance pay. We think this case is similar to Nesser, King & LeBlanc v. Laredo Marine Services, Inc., 630 So.2d 327 (La. App. 4th Cir.1994), where a corporation's majority stockholder assured the corporation's legal counsel that he would be personally responsible for the legal fees of the corporation. The court held that if a promisor unconditionally obligates himself to pay the debt of another, he becomes primarily responsible for the debt, and the rules particular to suretyship are not implicated. See also, Smith v. Anderson, 517 So.2d 926 (La. App. 3d Cir.1987).
Under the instant facts, we find that it is unnecessary to decide if the defendant's guarantee constitutes a suretyship contract securing the principal obligation of Section 8.4 of the employment contract, even though Boles' obligation appears to be a primary obligation for the same debt owed by First City. The result is the same, whether it is a primary obligation or one of suretyship. LSA-C.C. Art. 3046. Boles unconditionally guaranteed the plaintiffs that he would pay the plaintiff the severance pay provided for in Section 8.4 of the employment contract if either or both of them were terminated before the contract term expired. We therefore conclude that the finding by the jury that Boles did not breach an obligation which he owed to the plaintiffs is legally incorrect.
The agreement by Boles to pay severance pay if the Carneys were terminated before the end of their employment amounts to a stipulated damages clause. LSA-C.C. Art. 2005, et seq. As such, plaintiffs are not required to prove their damages. LSA-C.C. Art. 2009.
Stipulated damages may be modified by the court if they are so manifestly unreasonable as to be contrary to public policy. LSA-C.C. Art. 2012. Stipulated damages should reasonably approximate the damages suffered by the obligee and not be penal. American Leasing Co. v. Lannon E. Miller & Son, 469 So.2d 325 (La.App. 2d Cir.1985), on appeal after remand, 493 So.2d 764 (La.App. 2d Cir.1986). The court must determine the reasonableness of the amount of stipulated damages by inquiring whether the parties attempted to approximate actual damages in confecting the stipulated damages provision of the agreement. American Leasing Co., supra.
When stipulated damages in a contract do not bear any reasonable relation to the actual damages suffered, courts have reduced the amount of damages recoverable. For example, in Philippi v. Viguerie, 606 So.2d 577 (La.App. 5th Cir.1992), writ denied, *344 609 So.2d 226 (La.1992), the court affirmed the trial court's reduction of stipulated damages arising from breach of a noncompetitive agreement where an award of the stipulated damages in the contract would have resulted in the plaintiff receiving an amount equal to the purchase price he paid to defendant for the business.
The record in this case indicates that the Carneys were attempting to use the stipulated damages provision as a hedge or safety net against the possibility the bank would fail. Since both of them were to be employed at the same institution, such failure would leave them both out of work and without loan portfolios to make them attractive prospects for employment at other banking institutions. Of course, the sole purpose of the FSLIC takeover was to close the insolvent institution in an orderly fashion. Thus, the Carneys' job security was even more tenuous than when they accepted employment with the financially troubled First City Bank. The attendant uncertainty is clearly an aspect of the damages they suffered.
On the other hand, to award each of the Carneys a full year's salary would result in a windfall which in no wise reflects the actual damage they suffered because of their continuous and uninterrupted employment throughout the term of the contract at the same pay. We therefore conclude that to award the Carneys $125,000 (the full amount of the stipulated damages in the contract of guaranty from Boles) would be so manifestly unreasonable as to be contrary to public policy. LSA-C.C. Art. 2012. Considering the circumstances which we have previously mentioned which center around the uncertainty that was interjected into the plaintiffs' careers by the FSLIC takeover and considering the respective salaries of the two plaintiffs, we find that plaintiff, VADEN JACKSON CARNEY, III, is entitled to damages in the amount of TWELVE THOUSAND DOLLARS ($12,000), and plaintiff, DIANE WILLIAMS CARNEY, is entitled to damages in the amount of NINE THOUSAND DOLLARS ($9,000). These sums will bear legal interest from the date of judicial demand until paid. All costs of this litigation are assessed against the defendant.
REVERSED AND RENDERED.
LINDSAY, J., dissents and assigns reasons.
LINDSAY, Judge, dissenting.
I respectfully dissent from the majority opinion which reverses the trial court judgment and allows the plaintiffs to recover damages for loss of employment when, in fact, the plaintiffs did not lose their employment.
The jury rejected plaintiffs' demands to enforce an agreement with William R. Boles which guaranteed the plaintiffs would receive a one year salary if they were terminated from their employment as bank officers of First City Savings and Loan Association in Monroe. The jury found that although the plaintiffs' contract of employment was terminated at First City through operation of federal law when that institution failed, their employment continued with the new banking entity created by the federal government. Therefore, the jury found that the defendant, Mr. Boles, was not liable to the plaintiffs for severance pay.
In reversing the jury verdict, the majority awards the plaintiffs a total of $21,000, plus interest, when they have suffered no loss. This damage award is simply a penalty imposed upon the guarantor for the failure of this financial institution, when other similar institutions were failing throughout the country.
The guaranty agreement between these parties was designed only to insure that the plaintiffs would have continuous employment for a term of three years, which they received. To affirm, under the limited circumstances of this case, would not do violence to the cases which hold that terminated employees under term contracts, are not required to mitigate their damages. The principles of Andrepont v. Lake Charles Harbor and Terminal District, 602 So.2d 704 (La.1992), continue to apply, and the employee with a contract for a term who is terminated without cause, is still entitled to stipulated damages when the employment has been terminated. *345 (In Andrepont, I suggest the employee was sent away from his employment.)
Here, federal law required that the employment contract be terminated when First City failed. Yet, the plaintiffs never lost their jobs. This is not the type of case normally seen where an employer and an employee, having entered into an employment contract for a term, part company and the employee is "sent away" from the job. LSA-C.C. Art. 2749. The plaintiffs were never "sent away" from their employment and they continued to work in the same place, at the same desk, at the same job, at the same pay. This is a special case. The defendant only guaranteed the plaintiffs' salaries, which they continued to receive.
If plaintiffs had lost their jobs, they would have had no duty to mitigate their damages under this contract. However, they did not lose their jobs, nor were they "sent away." Federal law mandated a termination of their contracts of employment, but their actual employment and their receipt of salary and benefits never ceased. Had the plaintiffs left their employment, a different situation might be presented. However, in this case, they did not leave and the RTC, the successor of First City, continued to pay plaintiffs' their salaries and provided jobs, just as before.
Because the plaintiffs lost nothing under their original employment contract, and received all the benefits to which they were entitled, the guarantor should not be responsible for any so-called "damages." Under the circumstances of this case, the guaranty simply did not come into play.
Accordingly, I would affirm the jury verdict. I respectfully dissent.