**THE TRAVELERS INSURANCE GROUP INC. and the Travelers Indemnity Company of Connecticut**

v.

**O.C.S., INC. a/k/a Oilwell Control Services Inc. and Janex Oil Company.**

**Civ. A. No. 95–0666.**

United States District Court, E.D. Louisiana.

Jan. 10, 1996.

---

Russell Keith Jarrett, Liskow & Lewis, New Orleans, LA, for plaintiffs.

Vincent Ross Cicardo, Cicardo Law Offices, Alexandria, LA, for O.C.S., Inc.

David Louis Carrigee, Rebecca Alison Fariss, Burke & Mayer, New Orleans, LA, for Janex Oil Company.

### ORDER GRANTING IN PART, DENYING IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on the separate motions of plaintiff, The Travelers Insurance Group Inc. and The Travelers Indemnity Company of Connecticut (collectively known as "Travelers"), for summary judgment against defendants, O.C.S., Inc. a/k/a Oilwell Control Services Inc. ("OCS") and Janex Oil Company ("Janex"). As to OCS, the Court DENIES plaintiff's motion. As to Janex, the Court GRANTS plaintiff's motion.

## I. BACKGROUND

On November 10, 1994, an explosion occurred on a natural gas platform that was used to produce natural gas from a nearby gas well. Janex owned and operated the platform and well, which was located on Lake St. Catherine in Orleans Parish. The explosion killed a man and damaged a pipeline leading from the platform, allowing gas to escape into the atmosphere. Janex, through its president, Noell Rather, contacted OCS, a company that specializes in controlling well fires, to put out the fire. The next morning, Rather met with Steve Clark, the president of OCS, in Slidell, Louisiana.

In his deposition, Clark testified that Rather hired him to extinguish the fire and control the well soon after their meeting started at 5:30 a.m. on the morning of November 11. (Plaintiff's Ex. A., Depo. of Steve Clark.) In addition, Clark stated that after he and Rather had an opportunity to survey the site by boat, Rather renewed his offer to hire OCS for the job. (*Id.* at 79.) At some point prior to returning to the dock, Clark and Rather discussed payment. According to Clark, Rather told him that "even though he didn't have cash, that he had the world's best insurance and that all of this was covered and that the insurance agent would be there in the morning when we got to the dock." (*Id.* at 70.)

When Clark and Rather returned to the dock between 8:30 a.m. to 9:00 a.m., they were met by James Currie, a claims adjuster

from Travelers.[1] After introductions, Clark stated that Currie, on behalf of Travelers, agreed to pay for OCS's fire containment services.[2] Clark "asked Jim [Currie] at that time if Travelers was the responsible party and he [Currie] said that Travelers was the responsible party with liability interest in this matter." (Plaintiff's Ex. A, Clark Depo. at 82.) Clark testified that he would not have started work to control the fire had he not received assurances from Travelers that it would pay for his company's services. (*Id.* at 271.) Clark explained that Rather had told him he had no money to pay OCS and it was not until Travelers authorized the work that Clark "consented to go out and do it." (*Id.* at 272.)

On December 16, 1994, OCS sent an invoice and letter requesting payment for $635,000 in firefighting services to Currie, the Travelers claims adjuster. (Defendant's Ex. F, Letter from Steve Clark to James Currie of Dec. 16, 1994.) Travelers refused to pay. It stated that no valid contract existed between OCS and Travelers and that the services performed by OCS were excluded from Janex's general liability policy.

On February 24, 1995, Travelers filed a complaint requesting declaratory judgment that (1) it owes no obligation to OCS under the purported oral agreement, and (2) the general liability policy it issued to Janex does not cover OCS's claim. In the event the Court found that Travelers owed an obligation to OCS, Travelers seeks judgment against Janex for a like amount to prevent unjust enrichment. On April 27, 1995, OCS filed a counterclaim and cross-claim against Travelers and Janex for the $764,800 in services it provided in extinguishing the fire on Janex's production platform. On June 19, 1995, Janex filed a counterclaim against Travelers seeking a declaratory judgment requiring Travelers to pay should the Court render judgment against Janex and in favor of OCS.

## II. DISCUSSION

Travelers brings these motions for summary judgment seeking judgment as to (1) its claim for declaratory judgment against OCS holding that there is no enforceable contract between Travelers and OCS; (2) OCS's counterclaim against Travelers for breach of contract; and (3) its claim for declaratory judgment against Janex holding that the services rendered by OCS are excluded from the general liability policy Travelers issued to Janex. The Court will first address Travelers' motion regarding OCS.

### A. Travelers' Motion Regarding OCS

■ Under Fed.R.Civ.P. 56, summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). All inferences will be made in favor of the party opposing summary judgment. However, the opposing party may not rely on mere allegations or denials but must set forth specific facts establishing that genuine issues exist for trial. *See* Fed.R.Civ.P. 56(e). Only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Although Travelers and its representative, James Currie, dispute that it ever agreed to pay for the services offered by OCS, it states that this dispute will not affect the outcome of the suit. Travelers asserts that even under the version of events offered by Steve Clark of OCS, a valid contract does not exist between Travelers and OCS. The crux of Travelers' argument is that the alleged contract is one of suretyship. Because a suretyship contract under Louisiana law must be in writing and cannot be proven with parol evi-

1. Janex had a general liability policy, policy # EELS 464K844 94, with Travelers.

2. Although Currie and Travelers dispute Clark's version of the events surrounding the formation of the alleged contract between Travelers and OCS, Travelers states that resolution of the dis-

pute is unnecessary for Travelers to prevail on its motion. Travelers asserts that this dispute is not a genuine material fact. (Plaintiff's Mem.Supp.Mot.Partial Summ.J. against OCS, at 3.)

dence, Travelers asserts that the oral agreement alleged by OCS is invalid as a matter of law.

Under Louisiana law, a suretyship is "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ.Code art. 3035; *SNS Contractors v. Algernon Blair, Inc.,* 892 F.2d 430, 433 (5th Cir.1990). A "contract is accessory when it is made to provide security for the performance of an obligation." La. Civ.Code art. 1913; *SNS Contractors,* 892 F.2d at 433. An obligation to pay the debt of a third party must be in writing. *See* La. Civ.Code art. 1821; *United States v. Park Towers, Inc.,* 8 F.3d 306, 310 (5th Cir.1993).

The facts alleged by OCS are not consistent with a suretyship contract. Travelers did not guarantee payment in the event Janex did not pay; instead, it allegedly agreed to pay OCS regardless of Janex's actions. There is simply no evidence that Travelers agreed to pay only if Janex did not. Further, Clark testified that Travelers gave him tasks to perform and that Travelers directed him to send the invoice for OCS's services to Janex who would pass it on to Travelers for payment. (Plaintiff's Ex. A, Clark Depo. at 91, 169.) These facts are not indicative of a contract of suretyship. *See SNS Contractors,* 892 F.2d at 433 (suretyship usually exists when "surety simply promises the creditor to fulfill the debtor's contractual obligation if the debtor defaults in fulfilling his obligation to the creditor.") Instead, the alleged facts indicate that Travelers "unconditionally obligated" itself to pay OCS. Thus, Travelers becomes primarily responsible for the debt. *Rice, Fowler, Kingsmill, Vance, Flint & Booth v. J.A.R., Inc.,* 1993 WL 255135 (E.D.La. June 30, 1993); *Nesser, King & LeBlanc v. Laredo Marine Services, Inc.,* 630 So.2d 327, 329 (La.App. 4th Cir. 1994). This type of promise does not create a suretyship and can be proven with parol evidence. *Id.*

In addition, Travelers may have had a pecuniary interest in paying for OCS's services. The question of whether Travelers had a pecuniary interest in getting the fire under control is a factor in determining whether Travelers' alleged obligation is primary or as a surety. *Smith v. Anderson,* 517 So.2d 926, 927 (La.App. 3d Cir.1987) (sole owner of corporation was sufficiently financially interested and motivated to undertake primary liability); *Seashell, Inc. v. Simon,* 398 So.2d 99, 101 (La.App. 3d Cir.1981) (pecuniary interest is a factor to consider in determining nature of contract) Noell Rather, the president of Janex, testified that Clark had told him that Currie, the Travelers representative, said that OCS should extinguish the fire so that Travelers would not be subject to any more liability as to personal injury and property damage. (Defendant's Ex. L, Depo. of Noell Rather at 121–23.) This indicates that Travelers may have obtained OCS's promise to extinguish the fire to limit the personal and property liability it had under the insurance policy it issued to Janex. These facts, as alleged by OCS, offer one explanation why Travelers may have "unconditionally" obligated itself to pay OCS.

In its briefs, Travelers claims that OCS and Janex already had an agreement before meeting with the Travelers representative. According to Travelers, the timing of the alleged contracts could only mean that its alleged contract with OCS was a suretyship. First, this argument is immaterial if the contract is primary, for the reason discussed above. In addition, it is not entirely clear that there was a valid contract between OCS and Janex prior to the meeting with Travelers. Although Clark agreed that Janex had "hired" him and OCS, he also stated that he did not "consent to go and do it" until Travelers agreed to pay. (Plaintiff's Ex. A., Depo. of Clark at 272.) Clark explained that if he had not had the conversation with Currie, Traveler's claims adjuster, he would not have gone out to control the fire but would have told Janex its problems and gone home. (*Id.* at 271.) There is a material fact in dispute as to whether Clark "accepted" Janex's "offer" of employment prior to meeting with Travelers. This makes it impossible for the Court to determine on summary judgment whether the alleged contract between Travelers and OCS was accessory or primary. Accordingly, the Court denies plaintiff's motion for summary judgment as to OCS.

## B. Travelers' Motion as to Janex

Travelers argues that the general liability policy between itself and Janex, policy no. EESLS 464K4844 94, fails to cover the services provided by OCS. The Court agrees.

First, the Court finds that the insurance contract must be analyzed under Texas law. Applying Louisiana choice-of-law provisions, the Court notes that Janex is a Texas corporation with its headquarters in Dallas, Texas, while Travelers is incorporated in Connecticut. The insurance contract was negotiated by Janex's Dallas-based insurance agent, and the policy was delivered in Texas. All of this points to the application of Texas law. *See Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas, Inc.*, 846 F.2d 319 (5th Cir.1988) (Texas law applicable to policy covering Louisiana oil wells where Texas was place of contracting and negotiating.)

The Court further finds that interpretation of an insurance contract is a matter of law. *Nat'l Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir.1990). To recover on an insurance policy under Texas law, an insured must prove that its loss is covered by the policy. *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 945 (Tex.1988). If the insured meets his burden, then the insurer has the burden of proving the applicability of policy exclusions. Tex.Ins.Code art. 21.58(b).

Here, Janex is unable to show that coverage extends to OCS's services. The policy is intended to cover Janex against third-party tort liability arising out of personal injury and property damage. The policy reads:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

(Plaintiff's Ex. A, Janex Ins. Policy at 1.) OCS brings no such tort claim, instead asserting an action for unjust enrichment. Janex's alleged liability does not stem from tort liability but out of an alleged contract for services with OCS. Thus, OCS's claim is not covered by the policy.

In addition, OCS's claim is neither one for personal injury nor property damage. Although it is true that Janex suffered property damage to its platform and production line, that is not at issue in OCS's claim. Property damage is defined under the policy as "physical injury to tangible property" or "loss of use of tangible property." (Plaintiff's Ex. A, Janex Ins. Policy at 11.) OCS's injury is a purely economic loss that meets neither definition of property damage.

But even assuming that paying for services to control a fire on the insured's property would be "property damage" under the policy, Janex admits that several policy exclusions "would or could exclude coverage to Janex." *See* Janex's Opp. Travelers' Mot. Partial Summ. J. at 3. However, it asserts that "these otherwise applicable exclusions of the policy are made inapplicable when there is a fire to a leased premise." *Id.* Janex specifically refers to a policy provision that reads as follows:

> "Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III)."

(Plaintiff's Ex. A., Janex Ins. Policy at 3.) Janex argues that because the damage occurred on a state mineral lease, the provision applies. The Court disagrees.

It is undisputed that Janex is the owner and operator of the production platform and the gas well. It is also undisputed that an explosion and ensuing fire occurred on the platform and that gas was leaking from a production line leading from the platform. OCS went out to extinguish the fire and to stop the leaking gas. Therefore, the premises in question are the platform and the production lines leading from it, not the state mineral lease. Therefore, as property owned by Janex, it is not covered by the savings provision. Instead, it falls squarely into exclusion j(1):

> This insurance does not apply to:
>
> "Property damage" to:

(1) Property you own, rent or occupy.

(Plaintiff's Ex. A., Janex Ins. Policy at 3.)

 Although some courts have held that the "owned property" exclusion is inapplicable to costs incurred in eliminating the threat of pollution spreading to adjacent property, these cases do not apply here. *See, e.g., Intel Corp. v. Hartford Accident & Indemn. Co.,* 952 F.2d 1551, 1555–66 (9th Cir.1991) ("owned property" exclusion inapplicable); *Allstate Ins. Co. v. Quinn Const. Co.,* 713 F.Supp. 35 (D.Mass.1989) (same). Those cases are predicated on the theory that the insured would reasonably expect coverage for efforts to mitigate the damage from pollution emanating from its own property. *Intel Corp.,* 952 F.2d at 1565–66. However, Janex would have no such reasonable expectation of coverage here because of a pollution exclusion in the policy. In relevant part, the exclusion reads as follows:

This insurance does not apply to

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants . . .

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

(Plaintiff's Ex. A, Janex Ins. Policy). The pollution exclusion obviously applies. The explosion caused gas to flow from Janex's production line and smoke to spread into the atmosphere. Both the spread of the gas and the smoke fall under the pollution exclusion. There was also testimony that the Coast Guard was pressuring Janex to control the fire, and it is clear that Janex had a statutory mandate to control the fire. (OCS's Ex. D, Clark Depo. at 92.); La.R.S. § 30:32–33. These facts also trigger the pollution exclusion.

 Even assuming that the savings provision exempted the policy from the exclusions that Janex concedes would otherwise apply, another portion of the policy expressly excludes the type of service that OCS performed:

The following exclusions are added to COVERAGE A (Section 1): This insurance does not apply to:

1. Any cost or expense incurred by you or at your request or by or at the request of any "co-owner of the working interest" in connection with controlling or bringing under control any oil, gas or water well;

4. Upon the "occurrence" of a blow-out or cratering of any oil, gas or water well resulting from or in connection with operations performed by you or on your behalf, you agree that you will at your own cost and expense, promptly and diligently take whatever steps are necessary or legally required of you or necessary for you or any other person to bring such well under control.

Janex argues that the explosion in question did not constitute a "blow-out" or "cratering" of the gas well. Therefore, it asserts that the exclusion does not apply. However, this argument ignores the first exclusion, which deals with "bringing under control any oil, gas or water well." There is no requirement that the well have blown-out. As the services provided by OCS were to bring the gas well under control, the exclusion contained in Janex's insurance policy applies.[3]

 Finally, Janex points to language in the supplemental payments section to argue that Travelers is liable to pay Janex under the policy in the event the Court finds that Travelers agreed to pay OCS for its services. The section states as follows:

SUPPLEMENTAL PAYMENTS—COVERAGES A AND B

We will pay with respect to any claim or "suit" we defend:

1. All expenses we Incur.

(Plaintiff's Ex. A., Janex's Insurance Policy at 5.) Janex's argument means that if the

---

**3.** Steve Clark, president of OCS, testified that OCS had to "control the remaining flow of petro-

leum product from the well." (OCS's Ex. B, Clark Depo. at 84.)

Court finds that Travelers agreed to pay OCS for its services, such an agreement means that Travelers has agreed to "defend" the OCS "claim" or "suit" pursuant to the Janex policy, and OCS's services are expenses Travelers incurred in defending the OCS claim. This simply does not follow. OCS's services would not constitute "expenses" Travelers incurred in defending a separate claim. The expenses are the claim. Further, the Court has already indicated that payment to Janex for OCS's services is not covered under the policy. If the factfinder finds that Travelers must still pay OCS, it will be on a theory other than insurance coverage under the Janex policy. Therefore, Janex may not rely on the supplemental payments provision in the policy to establish coverage. Accordingly,

**IT IS ORDERED** that Travelers' motion for summary judgment against OCS is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Travelers' motion for summary judgment against Janex is hereby **GRANTED.**