852 So.2d 1136 (2003)
Mary MOBLEY, Plaintiff-Appellee,
v.
Gary MOBLEY, Defendant-Appellant.
No. 37,364-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
*1137 Kammer & Huckabay, Ltd., by Charles H. Kammer, III, Shreveport, for Appellant.
Susan D. Scott, Shreveport, for Appellee.
Before GASKINS, PEATROSS & MOORE, JJ.
PEATROSS, J.
This is an appeal from a judgment of the trial court enforcing the stipulated damages provisions contained in a prior consent judgment regarding child support payments. Gary Mobley appeals, arguing that the stipulated damages provisions constitute usurious interest and/or are manifestly unreasonable and against public policy and should not, therefore, be enforced. He further asserts that the trial court erred in refusing to allow him to put on evidence of Mrs. Mobley's actual damages resulting from his failure to make timely payments under the consent judgment. Finding that the trial court erred in refusing to allow Mr. Mobley to present evidence of actual damages to counter the enforcement of the stipulated damages provisions, we reverse the portion of the judgment finding that the stipulated damages provisions were not manifestly unreasonable or against public policy and awarding stipulated damages to Mrs. Mobley and, further, remand the matter for an evidentiary hearing on the reasonableness of the stipulated damages in accordance with this opinion. In all other respects, the judgment of the trial court is affirmed.

FACTS
Mr. and Mrs. Mobley were awarded a final divorce on October 7, 1999, and, shortly thereafter, entered into a consent judgment whereby Mr. Mobley agreed, inter alia, to pay child support in the amount of $972.59 per month. The consent judgment was signed on November 24, 1999, by both counsel, the parties and the trial judge.
Less than two years later, Mrs. Mobley filed a rule to accrue back support, which she alleged to be over $9,900 through June 2001. She also sought an income assignment to have Mr. Mobley held in contempt *1138 and punished accordingly and ordered to pay attorney fees and costs. On August 14, 2001, another consent judgment was entered between the parties and signed by Mr. Mobley's new counsel and the trial judge. This consent judgment fixed past due child support in an amount over $10,000; awarded nearly $450 for past due medical, dental, etc., expenses; provided for legal interest in the amount of $972; awarded attorney fees to Mrs. Mobley's attorney in the amount of $1,800; and ordered Mr. Mobley to pay all court costs.
A payment plan was agreed to whereby Mr. Mobley was to liquidate the substantial arrearage by issuing four post-dated checks, of $250 each, in the months of August and September 2001 plus remain current in his ongoing support. He was also to pay Mrs. Mobley $1,500 the first day of every month beginning October 1, in addition to his regular child support obligation, until all arrearages, attorney fees, etc. had been paid in full. Mr. Mobley also agreed in the judgment to have his payments directly deposited into a bank account established by Mrs. Mobley so that they would be credited to the account on or before the due date of each payment.
Mr. Mobley further agreed that, if he failed to "timely deposit any payment when due ... whether a payment for regular support or his payment of $1,500.00 toward the arrears, he shall be assessed a penalty of $25.00 per day for each missed payment, etc." Mr. Mobley also agreed to a ten percent penalty if he was in default on payment of the medical or extra-curricular expenses within the 15-day period. Finally, he agreed that, if he failed to exercise his visitation without making advance arrangements acceptable to Mrs. Mobley to change his visitation days, he would pay yet another $25 per day penalty for "each missed day of scheduled visitations."
Mr. Mobley, however, was unable to comply with the payments to which he agreed. Another rule to accrue past support was filed on March 26, 2002, which alleged he was in default of his previous consent judgment obligations for nearly $3,000 in regular support obligations, but, more significantly, for over $18,500 in stipulated damages for non-payment of support, medical expenses and for failure to exercise visitation. Mr. Mobley filed a counter-rule seeking a determination that the stipulated damages provisions should be declared unenforceable or, in the alternative, to the extent that they were enforceable, that the trial court reduce the amount of stipulated damages to compensate Mrs. Mobley for her "actual damages."
Following a hearing on the rule, the trial judge denied the relief sought by Mr. Mobley in seeking a declaration of unenforceability of the stipulated damages provisions. The trial judge specifically found that the stipulated damages provisions were reasonable and not against public policy or in violation of the Civil Code provisions on usury or excessive interest. He further held that this ruling "eliminate[d] the need for evidence on the issue of actual damages as same would not be relevant." He then awarded Mrs. Mobley unpaid support, attorney fees, costs and interest in the amount of $11,683.84 and $900 in attorney fees. Further, Mr. Mobley was found in contempt and ordered to face 90 days in jail, with 1 day suspended, execution of which was deferred for three months to give him an opportunity to purge himself of contempt. Finally, the trial judge assessed and determined the amount of stipulated damages due by Mr. Mobley to Mrs. Mobley to be $45,258.22 for untimely payment of support, $583.63 for untimely payment of his share of medical and extra-curricular expenses and $850 *1139 for failure to exercise scheduled visitation. This appeal ensued.

DISCUSSION
Mr. Mobley raises the following four assignments of error on appeal (verbatim):
1. The trial court committed reversible error by finding that the penalty provision was enforceable and not against public policy.
2. The trial court committed reversible error by finding that the penalty provision was not usurious.
3. The trial court committed reversible error by finding that the penalty provision was not penal and manifestly unreasonable.
4. The trial court committed reversible error by not allowing evidence on the amount of actual damages incurred by the Appellee as a result of the Appellant failing to make timely payments on a money judgment.
Finding merit in Mr. Mobley's fourth assignment of error regarding the denial of his request to adduce evidence of actual damages to counter Mrs. Mobley's attempt to enforce the stipulated damages provisions, we begin our discussion with that issue.
As previously stated, the stipulated damages provisions at issue in this appeal are contained in a consent judgment regarding, inter alia, the payment of child support by Mr. Mobley and his exercising of visitation with his children. A consent judgment is a bilateral contract which is voluntarily signed by the parties and accepted by the court. It has binding force from the voluntary acquiescence of the parties, not from the court's adjudication. Gulledge v. Gulledge, 32,561 and 32,562 (La.App.2d Cir.8/18/99), 738 So.2d 1229, citing Martin Forest Products v. Grantadams, 616 So.2d 251 (La.App. 2d Cir.1993), writ denied, 619 So.2d 580 (La. 1993) and Williams v. Williams, 586 So.2d 658 (La.App. 2d Cir.1991).
La. C.C. art.2005 provides that:
Parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation.
That stipulation gives rise to a secondary obligation for the purpose of enforcing the principal one.
Article 2005 replaced former article 2117, substituting the term "stipulated damages" for "penal clause." No matter how the clause is labeled, it is essentially a clause designed to both fix the damages caused by nonperformance of the principal obligation and act as a constraint to encourage performance of that obligation. Philippi v. Viguerie, 606 So.2d 577 (La.App. 5th Cir.1992), writ denied, 609 So.2d 226 (La.1992). Such a clause, however, is not a vehicle for recovery of punitive damages, as opposed to compensatory damages. Id.
Stipulated damages may be modified by the court if they are so manifestly unreasonable as to be contrary to public policy. La. C.C. art.2012. In Carney v. Boles, 25,905 (La.App.2d Cir.9/21/94), 643 So.2d 339, writ denied, 94-2592 (La.12/16/94), 648 So.2d 391, a panel of this court explained that stipulated damages should reasonably approximate the damages suffered by the obligee and not be penal. Further, "the court must determine the reasonableness of the amount of stipulated damages by inquiring whether the parties attempted to approximate actual damages in confecting the stipulated damages provision of the agreement." Id., citing American Leasing Company of Monroe, Inc. v. Lannon E. Miller & Son, General Contracting, Inc., 469 So.2d 325 (La.App. 2d Cir.1985). In addition, comment (c) to article *1140 2005 states that "[a] stipulated damages clause is given effect if the court deems it to be a true approximation of actual damages."
It is also clear, however, that the obligee is not required to adduce proof of actual damages when attempting to enforce a stipulated damages clause. La. C.C. art.2009 states that:
An obligee who avails himself of a stipulated damages clause need not prove the actual damage caused by the obligor's nonperformance, defective performance, or delay in performance.
The comments to the article explain that the idea of stipulated damages necessarily requires that the plaintiff/obligee have the advantage of not having to prove damages. Comment (d), however, states:
[t]his article does not prevent a defendant [obligor] from proving that a plaintiff [obligee] who seeks to avail himself of a stipulated damages provision actually has sustained no loss. It merely shifts the burden of proof on the issue of damages from the plaintiff [obligee] to the defendant [obligor]. (Emphasis added.)
Again, enforcement of a stipulated damages clause requires that the court inquire as to the reasonableness of the amount of damages stipulated by inquiring whether the parties, by the clause, truly attempted to approximate actual damages. American Leasing Company of Monroe, Inc., supra. Proof of actual damages by the plaintiff is not a prerequisite to such a determination, but we conclude that article 2009 allows for evidence of actual damages or proof that the plaintiff suffered no loss from the defendant to show that the stipulated damages provision is manifestly unreasonable as provided in article 2012. We note that the trial court is not bound by the proof of actual damages as shown by a defendant/obligor. Stipulated damages may exceed, to some degree found reasonable by the court, actual damages. Id.
In the case sub judice, Mr. Mobley requested that he be allowed to put on evidence of actual damages in an effort to show that the stipulated damages were so high as to be manifestly unreasonable and against public policy. His request was denied, with the trial court deeming the stipulated damages provisions reasonable and stating in the judgment that any evidence of actual damages from the defendant would not be relevant. To the contrary, since stipulated damages are to be an approximation of actual damages, any evidence of actual damages offered by Mr. Mobley would be relevant and would serve as the benchmark for the trial court's required determination of reasonableness. Indeed, as previously stated, article 2009 and the comments thereto indicate that the burden is on the defendant to counter enforcement of a stipulated damages clause. We conclude, therefore, that it was error for the trial court to make a finding of reasonableness of the stipulated damages without allowing Mr. Mobley to present evidence that the stipulated damages were unreasonably high in light of damages actually suffered by Mrs. Mobley. The matter must be remanded to the trial court for an evidentiary hearing at which Mr. Mobley shall be allowed to adduce evidence of actual damages to counter enforcement of the stipulated damages provisions and after which the trial court shall make a determination of the reasonableness of the stipulated damages. This finding renders moot any discussion of Mr. Mobley's other three assignments of error.

DECREE
Since we find that the trial court erred in refusing to allow Gary Mobley to present evidence of actual damages to counter *1141 the rule to enforce the stipulated damages provisions, the portion of the judgment of the trial court finding that the stipulated damages provisions are not manifestly unreasonable or against public policy and awarding such stipulated damages to Mrs. Mobley in the amount of $46,691.85 is reversed. The matter is remanded with instructions for the trial court to conduct an evidentiary hearing to determine the reasonableness of the stipulated damages, allowing Mr. Mobley to adduce evidence of actual damages to counter the rule to enforce the stipulated damages provisions. In all other respects, the judgment of the trial court is affirmed. Costs of appeal are assessed to Mary Mobley.
REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS. IN ALL OTHER RESPECTS, AFFIRMED.