STEWART, J.
hln this child custody matter, Aimee Diann Lawrence is appealing the trial court’s judgment awarding the parties joint custody, and designating Tony Lawrence the primary domiciliary parent. Asserting that the original custody decree was a considered decree, and that Tony did not satisfy the Bergeron standard, infra, Aimee now appeals.
Since the record before us does not indicate the trial court abused its discretion in its factual findings and determination, we affirm.
FACTS AND PROCEDURAL HISTORY
Tony Jason Lawrence and Aimee Diann Hackworth (formerly Lawrence) married on January 1, 2004. Of their marriage, two children were born. Gunner was born on October 10, 2004, and Gauge was born on September 27, 2006.
Tony and Aimee separated on February 21, 2010, and Tony filed for divorce two days later. Tony sought domiciliary custody of the two minor children. Aimee filed a reconventional demand, seeking joint and domiciliary custody of the children, child support, spousal support, exclusive use of the marital domicile, and a temporary restraining order against Tony, his father, and his brother.
Tony and Aimee’s judgment of divorce was rendered on February 24, 2011. In a separate judgment on rules, rendered on February 3, 2011, but signed on February 25, 2011, Tony and Aimee entered into a stipulated judgment granting joint custody of the two minor children, with Aimee designated as the domiciliary parent. Tony and Aimee also agreed to share physical custody of the children on a 50/50 basis, exchanging the children | ?every other Friday. Tony was also ordered to pay Aimee $1,225.00 per month in child support. An amended judgment was filed on May 11, 2011, due to the omission of Aimee being specifically designated as the *824 domiciliary parent in the February 3, 2011, judgment.
On May 24, 2011, Tony filed a motion and rule to terminate Aimee as primary domiciliary parent, alleging that she was not acting in the best interest of Gauge by re-enrolling him at First Baptist Wee School, instead of enrolling him at Wood-lawn Elementary School with his brother, Gunner. In response to Tony’s motion, Aimee filed an exception of no cause of action.
On June 3, 2011, Tony filed a motion to have his child support payment reduced due to his job loss, and a rule for contempt, alleging Aimee violated the judgment by having her boyfriend at her home after 10:00 p.m. when the children were with her. Tony filed another motion to terminate Aimee as primary domiciliary parent and for contempt on July 1, 2011, alleging that during her vacation, Aimee stayed in a room with their two minor children, while her boyfriend stayed in an adjoining room with his son, Logan, and her other son, Gatlin. Tony also alleged that Gatlin had been expelled from school for misbehavior and had failed most of his classes.
After a hearing on Tony’s motions, the trial court issued a judgment on September 21, 2011, granting Aimee’s exception of no cause of action, and granting Tony’s motion for a temporary reduction in child support. Tony’s payments were reduced to $500.00 per month for three months, and would return to $1,225.00 in January 2012.
13Aimee subsequently filed a rule for contempt for Tony’s failure to pay his child support obligation. She also included a claim for contempt for Tony’s failure to provide her with the right of first refusal in the event he could not care for their minor children for more than a three-hour period. Tony responded by filing a motion to reduce his child support, asserting that his child support payments should be reduced because his income was lower. He also asserted that Aimee had since remarried and enjoyed the benefits of expense sharing. The trial court denied Aimee’s rule for contempt, fixed Tony’s child support arrearage at $1,096.50, and lowered his child support payments to $253.00 per month, effective October 1, 2011.
On February 13, 2013, Aimee filed a rule to modify custody to have the current arrangement where they shared physical custody of the minor children on a 50/50 basis modified so that the children would reside primarily with her during the school year. She alleged that the current custody arrangement “is not working and is not in the best interest of the two children.” In response, Tony filed a rule to modify custody, seeking primary custody. He alleged that it would not be in the children’s best interest to grant Aimee primary custody, and that he is able to “provide a more stable and supportive environment for the minor children which would be more conducive to their emotional, physical, mental, financial, and educational well-being.” The hearing officer recommended that Aimee continue in her role as domiciliary parent, and that the visitation schedule be modified to every other weekend from Friday to Monday morning, alternating Wednesdays and holidays, and six weeks in the summer. Tony |4objected to these recommendations. The recommendations of the hearing officer were noted, but were not made an interim order of the court. Trial regarding this matter took place on October 15-16, 2013.
After the evidence was presented, the trial court issued a judgment in November 2013, awarding primary domiciliary custody of the minor children to Tony, with Aimee having visitation with the minor children on alternating weekends, on alter *825 nating Wednesdays after school through Thursday mornings, summer months, and holidays.[1] Aimee was also ordered to pay child support in the amount of $313.92 per month, with the exception of summer months, beginning January 1, 2014.
Aimee appeals.
LAW AND DISCUSSION

Legal Standard of Modification of Custody

In her first assignment of error, Aimee argues that the trial court erred in failing to treat her designation as the “domiciliary parent” of the two minor children in the May 13, 2011, amended judgment as a considered decree. She further argues that in order to change her designation, Tony has the heavy burden of proving her status as domiciliary parent is “so deleterious to the child as to justify a modification of the custody decree,” or of proving by “clear and convincing evidence that the harm likely to be caused by the changing of that designation is substantially outweighed by its advantages to the child.” Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986).
IfiThe primary consideration in any child custody determination is the best interest of the child. La. C.C. art. 131; Chandler v. Chandler, 48,981 (La.App.2d Cir.12/13/13), 132 So.3d 413; Atkins v. Atkins, 47,563 (La.App.2d Cir.9/26/12), 106 So.3d 614. This applies not only in actions setting custody initially, but also in actions to change custody. Gray v. Gray, 2011548 (La.7/1/11), 65 So.3d 1247. Jurisprudence provides different burdens of proof to modify custody in instances where the initial custody decree was either a stipulated (consent) judgment or a considered decree. A considered decree is an award of permanent custody made when the trial court has received evidence of parental fitness. Adams v. Adams, 39,424 (La.App.2d Cir.4/6/05), 899 So.2d 726; Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731. The party seeking modification of a considered decree bears the heavy burden of proving that “the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or ... that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.” Bergeron, supra.
Our law provides that a stipulated judgment is a bilateral contract between the parties, and as such, constitutes the law between them. Mobley v. Mobley, 37,364 (La.App.2d Cir.8/20/03), 852 So.2d 1136. It is the parties’ voluntary acquiescence, not the court’s adjudication, which gives the contract its binding force. Id. In cases where the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the | fiheavy burden of proof enunciated in Bergeron is inapplicable. Evans, supra; Wages v. Wages, 39,819 (La.App.2d Cir.3/24/05), 899 So.2d 662; Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir.3/15/95), 653 So.2d 48, writ denied, 660 So.2d 478 (La.9/22/95). In such cases, the party seeking modification has the twofold burden of proving (1) that there has been a material change in circumstances since the original custody decree, and (2) that the proposed modification is in the best interest of the child. Adams, supra; Evans, supra.
As we stated in the facts section of this opinion, in February 2011, Tony and Aimee entered into a stipulated judgment *826 granting joint custody of the two minor children, with Aimee designated as the domiciliary parent. In its original custody decree, rendered on February 3, 2011, and signed on February 25, 2011, the trial court included the following pertinent language:
WHEREAS, the parties entered into certain stipulations of record and the court considering the stipulations of the record and the law ...[.]
Based on the transcripts from the February 3, 2011, hearing, the consent of the parties, and the language included in the judgment, we find that the original custody decree was indeed a stipulated judgment and not a considered decree. This stipulated judgment was made with the consent of the parties, and no evidence of parental fitness was taken. The May 13, 2011, judgment that Aimee is referring to is an amended judgment rendered only to designate Aimee as domiciliary parent. Again, no evidence of parental fitness was taken. Therefore, the heavy burden of proof rule of Bergeron is inapplicable. Tony, who is seeking to modify custody 17established by a stipulated judgment, has the twofold burden of proving (1) that there has been a material change in circumstances since the original custody decree, and (2) that the proposed modification is in the best interest of the child, as jurisprudence has established. See Adams, supra; Evans, supra.

Factors in Determining Child’s Best Interest

Aimee’s remaining assignments of error involve the factors enumerated in La. C.C. art. 134; therefore, we will discuss these assignments together. Aimee asserts that the trial court abused its discretion in removing her as domiciliary parent, and in granting domiciliary custody of the two minor children to Tony. Specifically, she alleges that the trial court abused its discretion in its findings regarding the factors enumerated in La. C.C. art. 134.
The parties’ stipulated judgment, like all child custody judgments, is subject to modification by the court upon the appropriate showing and according to the best interests of the child. Adams, supra; Street v. May, 35,589 (La.App.2d Cir.12/5/01), 803 So.2d 312. As we stated in the previous assignment, where the original custody decree is a stipulated judgment, the party seeking modification of the decree must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Adams, supra.; Evans, supra.
The trial court is in the best position to ascertain the best interests of the children given each unique set of circumstances. A trial court’s ^determination in the establishment or modification of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson v. Thompson, 532 So.2d 101 (La.1988); Knowlton v. Knowlton, 40,931 (La.App.2d Cir.4/12/06), 927 So.2d 640.
Our legislature has provided 12 nonexclusive factors contained in La. C.C. art. 134 that are used to determine the best interest of the child:
1. The love, affection, and other emotional ties between each party and the child.
2. The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
3. The capacity and disposition of each party to provide the child with food, *827 clothing, medical care, and other material needs.
4. The length of time the child has lived in a stable, adequate environment, and-the desirability of maintaining continuity of that environment.
5. The permanence, as a family unit of the existing or proposed custodial home or homes.
6. The moral fitness of each party, insofar as it affects the welfare of the child.
7. The mental and physical health of each party.
8. The home, school, and community history of the child.
9. The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
10. The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
[11. The distance between the respective residences of the parties.
12. The responsibility for the care and rearing of the child previously exercised by each party.
The court must consider all relevant factors in determining the best interest of the child. La. C.C. art. 134; Chandler, supra; Atkins, supra. Every child custody case should be decided in light of its own particular set of facts, circumstances and relationships. Chandler, supra; Atkins, supra.
In the case sub judice, the trial court found that Tony and Aimee’s inability to have shared custody of their children under the February 2011, consent decree constituted a “significant material change in circumstance from the entry of the judgment which would justify the court making a change in custody.” We agree. Further, both parties have admitted that the shared custody arrangement was not working. This is evidenced by the fact that the parties have been involved in constant litigation since they separated.
The trial court determined, while analyzing the factors enumerated in La. C.C. art. 184, that Tony and Aimee were “even” regarding most of the factors, and that three of the factors weighed in Tony’s favor.
Aimee argues that the trial court erred in finding that she and Tony were equal regarding the second factor enumerated in La. C.C. art. 134, namely, “the capacity and disposition of each party to give the child love, affection and spiritual guidance and to continue the education and rearing of the children.” She believes that the evidence presented at trial showed that this factor weighed in her favor. We disagree. The evidence did not | ^indicate that this factor weighed in either party’s favor. It is clear that both parties provide the children with love, affection, and spiritual guidance. Even though the parties had previously disagreed about which school Gauge should attend, this dispute had been resolved before the November 2013 judgment was rendered. Aimee stated in her brief that she sought a modification in Tony’s visitation because the “children’s grades suffered when they were with him during the school year.” We agree with the trial court’s determination that the cause of the decline in grades was “due to the instability of the relationship between the two of you [Tony and Aimee] and going back and forth with two various degrees of parenting styles.”
Aimee also argues that the trial court erred in finding that the third factor enumerated in La. C.C. art. 134, namely, “the *828 capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs,” weighed in Tony’s favor. At the time of trial, Aimee testified that she was living in a home in West Monroe, Louisiana, acquired by her current husband, Ryan Hackworth, with his separate property. She had not obtained her high school diploma, or her GED, and she was not employed. Aimee relied on Ryan’s financial support, and child support from Tony. Ryan testified that he was two months behind on the mortgage payments on his home. Tony, on the other hand, testified that he was a college graduate with both a full-time job and a part-time job. Even though Tony rented his home in West Monroe, Louisiana, he had lived there for approximately three years at the time of the trial. Further, Tony paid the Inpremiums for the boys’ medical insurance. Based on these facts, the trial court did not err in finding this factor weighed in Tony’s favor.
Aimee also contends that the trial court erred in weighing the fifth factor enumerated in La. C.C. art. 134, namely, “the permanence, as a family unit of the existing or proposed custodial home or homes,” in Tony’s favor. Aimee argues that she was “penalized” for not owning her home. After reviewing the record, it is clear that the trial court weighed this factor in Tony’s favor because of the long-term consistency of his home. As stated in our discussion of the previous factor, the trial court was concerned about Aimee’s husband being two months behind on mortgage payments. The trial court also stated that it believed Tony’s current wife, Anna Lawrence, would encourage the children to have a relationship with Aimee.
Aimee also asserts that the trial court erred in weighing the tenth factor enumerated in La. C.C. art. 134, namely, “the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and other party,” in Tony’s favor. The record supports the trial court’s finding that both parties did a poor job in terms of encouraging a close and continuing relationship between the child and the other party. Based on the numerous unnecessary pleadings filed regarding child custody matters, it is clear that the parties cannot put aside their differences for the best interest of the children. Aimee has exhibited some alarming behavior at the boys’ school, such as accusing Anna of kidnapping the boys from school, when Anna was only picking them up at Tony’s direction due to his conflicting work schedule. Aimee caused a scene at the |12school, and even reported it to the school board. It is clear that Aimee used that opportunity to attack Tony personally. Additionally, when the children were in Tony’s custody, Aimee constantly interfered and challenged his authority. She would constantly go to the children’s school during the weeks that Tony had custody of them. When the children were riding the bus to Tony’s house or his mother’s house, she would often sit in the yard so that the kids would see her. Aimee’s actions made the children’s difficult adjustment to the custody schedule even more challenging. Even though Tony never “caused a scene,” the record indicated that he did not maintain an open line of communication concerning the boys’ well-being, often ignoring Aimee’s texts.
The trial court noted that Tony appeared to have a “calmer approach,” and “was more level headed and more balanced in terms of dealing with Aimee.” On the other hand, the trial court found Aimee’s actions to “be more emotionally driven, maybe more extreme.” It noted that she overreacted to situations instead of taking a “calmer approach.”
*829 Aimee also disagrees "with the trial court’s finding that she and Tony were “equal” regarding the twelfth factor enumerated in La. C.C. art. 134, namely, “the responsibility for the care and rearing of the child previously exercised by each party.” Aimee argues that during the parties’ marriage, she was a stay-at-home mom who provided nearly all of the care for the two minor children. Not to disclaim Aimee’s role in the children’s lives, the record also shows that Tony also cared for the boys during their shared ^custody arrangement, while maintaining a full-time and part-time job. The trial court did not err in making this determination. •
The trial court was faced with a difficult decision in this matter. It found that the parties’ inability to have shared custody of their children under the February 2011 consent decree constituted a “significant material change in circumstance from the entry of the judgment which would justify the court making a change in custody.” After carefully considering the testimony and evidence presented, the trial court determined that it would be in the children’s best interest to award the parties joint custody, and designate Tony as the primary domiciliary parent. After a careful review of the record, we find that the trial court did not abuse its discretion in making its determination.
CONCLUSION
For the reasons set forth in this opinion, we affirm the trial court’s judgment awarding the parties legal joint custody of the children, and designating Tony Lawrence as the primary domiciliary parent. Costs of the appeal are assessed against the appellant, Aimee Lawrence.
AFFIRMED.

. This judgment was not signed until February 14, 2014.