BROWN, C.J.
*495 Plaintiff, Tiffany O'Neal ("the mother"), appeals from a judgment denying a modification of custody for her daughter, HLA. The mother has shared custody with HLA's father, Defendant, Brandon Addis ("the father"), under a shared joint custody implementation plan previously rendered with a consent judgment. The mother seeks joint custody with her named as domiciliary parent. For the following reasons, we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
The mother filed a petition to establish custody on February 26, 2015, for HLA (DOB: September 11, 2011). A consent judgment was entered on April 15, 2015, providing for shared custody of HLA rotating on a weekly basis. The mother filed two rules for contempt for noncompliance with the joint custody plan against the father and then filed a rule to modify custody on September 15, 2016.
In the rule to modify custody, the mother alleged that there had been material changes in circumstances warranting a modification of custody. Specifically, the mother asserted that: 1) the father refused to communicate with the mother regarding school choice for HLA and refused to pay preschool expenses; 2) the father leaves HLA with his mother much of the time during his custody periods; and, 3) the father refuses to share in the expenses for the minor child, and child support needs to be set. The mother intended at that time to move to Dallas, Texas, at the conclusion of her education to become a nurse practitioner,[1] and she wanted to be named as HLA's domiciliary parent.
The court issued an interim order signed on November 30, 2016. The trial court continued the shared custody arrangement and appointed Shelley Booker to conduct a mental health evaluation of the parties and HLA and to submit a written report to the court. Ms. Booker completed her report in May of 2017.[2] The trial court held a hearing on November 16, 2017.
At the hearing, the father testified that, when the original custody plan was set, he lived with his parents in Bossier Parish. The father moved to West Monroe for work in May/June 2017 without telling the mother. The father has a managerial position at a restaurant in West Monroe and has a varying work schedule that involves working nights and weekends, in addition to days. He also works as a referee at high school football games. HLA stays with her paternal grandparents in Haughton during the father's custodial periods, and he travels back and forth from West Monroe to Haughton to see his daughter as his work and referee schedules allow.
The father testified that he did not take HLA to Young Years preschool every day when he had custody of her, and he did not discuss with the mother what elementary *496 school HLA should attend, even after the mother requested his input. The father testified that he was not always able to participate in HLA's school events, but his mother would attend instead. He also stated that he assisted HLA in a school project regarding HLA's family tree wherein he included his then-girlfriend, but not the mother. The father stated that he and the mother communicate mostly through text messages. The father gets benefits with his work, but at the time of the hearing, he had not added HLA to his health insurance. The father also testified that he wants to be able to claim HLA on his taxes.
The mother married her current husband ("the stepfather") about four months prior to the hearing. The stepfather testified at the hearing about his conviction in federal court for possession of methamphetamine[3] and the time he served in federal prison for that offense. At the time of the hearing, HLA's stepfather was on probation for the possession offense. He also testified about prior arrests. HLA's stepfather began dating the mother five months after he was released from prison.
The mother testified that she completed her schooling to become a nurse practitioner in December 2016. At the time of the hearing, she was working as a registered nurse because she could not find work as a nurse practitioner in the Shreveport job market. The mother testified that she did not tell the father that she was going to have HLA tested for the magnet school program prior to HLA being tested. She also testified that she made the decision about where to place HLA for preschool and elementary school after trying to get the father's input.
The mother testified that she thinks she and the father need to have better communication. The mother stated that there have been times when the father is exercising his week of custody, and, in order for the mother to find out why HLA was not at preschool, she had to call the paternal grandmother to find out what was going on. The mother stated that HLA is living a split life in which there is little consistency between each half. The mother sought joint custody with her named as domiciliary parent and the father exercising custody on alternating weekends. The mother testified that she was aware that the father worked Saturdays and Sundays when proposing that custody arrangement.
At the hearing, the judge stated that the child was leading separate lives with each parent because the mother and the father were not communicating with each other. The trial judge pointed out that the mother and the father do not really know each other. The judge opined that the father living in West Monroe and the father's week of custody with HLA being mostly exercised by the paternal grandmother could be a problem. The trial judge stated that the parents agreed to joint custody of HLA, and observed that the reasons for the mother wanting to modify the custody arrangement had to do with HLA's homework and HLA living with her paternal grandmother. The best interest of the child factors still favor joint custody in this case.
The trial court maintained the week on-week off custody arrangement and ordered the parents to attend parenting classes *497 and register and communicate through the Our Family Wizard program instead of through text messages. The court ordered the father to pay for half of HLA's health insurance costs and school fees. The trial court ordered the family to return to the court for a progress review hearing six months later.
The shared joint custody implementation plan was signed by the court on December 8, 2017. The plan provided for week on/week off shared custody with neither parent named as domiciliary parent. The plan provided a holiday and summer custody schedule with each parent providing HLA with unlimited telephone access to the other parent. The parents were ordered to exchange all medical information regarding the child with each other. Other provisions were made for accessing HLA's educational information, progress and calendar and HLA's transportation. The mother has appealed from the court's ruling, assigning the following errors:
1. Whether the trial court erred in holding the mother to a higher standard due to a prior consent judgment to shared custody prior to the child starting school.
2. Whether the trial court erred in holding the mother to a higher standard due to a prior consent judgment to shared custody prior to the father moving 90 miles away.
3. Whether the trial court erred in not analyzing the change in circumstances and best interest of the child under the La. C.C. art. 134 factors.
4. Whether the trial court erred in not placing the child's primary care with the mother when, for much of the father's week of custody, he is out of town and not with the child.
5. Whether the trial court erred in not modifying custody in light of the father's refusal to communicate with the mother and his failure to encourage a relationship between the mother and the child.
6. Whether the trial court erred in not determining whether a change in circumstances had been shown.
7. Whether the trial court erred in not naming a domiciliary parent.
DISCUSSION
The mother's assignments of error can be merged into three issues: 1) whether the trial court applied the correct standard for modification of a consent decree; 2) whether the trial court erred in finding there was no material change in circumstances and that continuing with week on-week off custody was in the best interest of the child; and 3) whether the court erred in failing to name a domiciliary parent.
Application of the Correct Standard for a Consent Decree
The mother argues that the trial court committed legal error by applying an incorrect principle of law regarding the burden of proof for custody modification of a consent decree. The father argues that the trial court applied the correct burden of proof to the mother's request, and the trial court was not required to delineate each alleged change in circumstance or articulate every factor from La. C.C. art. 134.
A court of appeal may not set aside a trial court's findings of fact in the absence of "manifest error" or unless they are clearly wrong. Evans v. Lungrin , 97-0541 (La. 2/6/98), 708 So.2d 731. Where the original custody decree is a stipulated judgment or consent decree, the party seeking modification must prove: 1) that there has been a material change of circumstances since the original custody decree was entered, and 2) that the proposed *498 modification is in the best interest of the child. Id. ; Chandler v. Chandler , 48,891 (La. App. 2d Cir. 12/13/13), 132 So.3d 413.
In the trial court's oral reasons for judgment, the court stated:
Just thinking back through the 134 issues and looking at Ms. Booker's report, right now the little girl clearly loves her father, clearly loves her mother, clearly enjoys both of their company but just, you know, presents a totally positive image when she's with the mother or the father, and I just don't want to do anything to disrupt that at this point in time without clear evidence to suggest there's a need for a change.
The court clearly considered whether there was a material change in circumstances since the original custody decree was entered. The trial court also considered the article 134 factors regarding the best interest of the child. Even though the trial court did not go through a rote recitation of each factor, we can see in the oral reasons for judgment that the court weighed the applicable factors in this case. This assignment of error lacks merit.
Material Change in Circumstances and Best Interest of the Child
The mother argues that there has been a material change in circumstances, and that it is in the best interest of the child for the previous custody arrangement to be modified, with the child residing primarily with her and the father having custody on alternating weekends and as his work schedule allows. She states that the following facts prove a material change in circumstances: 1) the child has started school and is no longer in preschool; 2) the mother has graduated with an advanced nursing degree; 3) the father moved 90 miles away without telling the mother about the move; 4) the mother remarried; 5) the father refuses to communicate with the mother; 6) the father was not helping the child with school; and 7) the child was primarily residing with the grandmother during the father's week of custody. The father argues that the facts enumerated by the mother do not amount to a material change in circumstances, and that it is still in the child's best interest for the mother and father to continue to share week on-week off custody.
Courts have an inherent power to determine a child's best interest and to tailor a custody order that minimizes the risk of harm to the child. Chandler, supra . The trial court has vast discretion in deciding matters of child custody and visitation. Id. ; Slaughter v. Slaughter , 44,056 (La. App. 2d Cir. 12/30/08), 1 So.3d 788. This discretion is based on the trial court's opportunity to better evaluate the credibility of the witnesses. Id. The trial court's findings in child custody matters will not be disturbed on review without a showing of clear abuse. Bergeron v. Bergeron , 492 So.2d 1193 (La. 1986) ; Chandler, supra .
The primary consideration in any child custody determination is the best interest of the child. Lawrence v. Lawrence , 49,373 (La. App. 2d Cir. 8/13/14), 147 So.3d 821. Louisiana Civil Code article 134 provides the factors the courts are to examine to determine custody.[4] The court *499 must consider all relevant factors in determining the best interest of the child. Chandler, supra . Every child custody case should be decided in light of its own particular set of facts, circumstances and relationships. Id.
The trial court, in its questioning of the witnesses and its oral reasons for judgment, demonstrates that the court did consider whether there had been a material change in circumstances. The trial court questioned the mother, the father, the maternal grandmother, the paternal grandmother, HLA's Sunday school teacher and HLA's stepfather. The trial court questioned the father about communication issues between him and the mother, the father's refereeing, the reasons why the father moved to West Monroe and the financial benefits the move had for HLA, and how long the parties have been doing week on-week off custody.
The trial court questioned the mother about the fact that she did not tell the father about testing HLA for the magnet program. He also questioned the mother about her proposed custody schedule of alternating weekends, so that the mother can have custody of HLA during the school week; the trial court pointed out that the father works on weekends and, in light of that fact, the court questioned the mother about how her proposed custody schedule is supposed to work and help HLA.
In looking at the article 134 best interest of the child factors, the trial court correctly applied the law to the facts in this case, which also can be seen in the questions the court asked of the witnesses and in the court's oral reasons for judgment. The court considered the parents' communication with each other, the parents' respective financial situations, continuity in HLA's care, whether the child is having any emotional problems due to the original custody agreement or other factors, and whether the mother's proposed custody schedule will benefit or harm HLA.
It is clear from the record that both parties love HLA and want to be a significant part of her life. She has emotional ties with both parents and her extended family. Both parents are able to adequately provide for HLA regarding food, clothing, medical care, and other material needs. Both parents expressed a willingness to *500 foster a relationship between HLA and the other parent. HLA has lived with the week on-week off custody arrangement for years and her mother, father and paternal grandmother have been important in her life and upbringing. The trial court observed that HLA staying with the paternal grandmother so much because the father works and lives in West Monroe could be a problem. However, the father and paternal grandmother testified that he sees HLA at least four to five days during his week of custody. Prior to his move to West Monroe, the father lived with the paternal grandmother and that is where HLA lived during the father's custody week. The distance between the parents' residences is approximately 90 miles, but given that the father is willing to travel to the paternal grandmother's residence in Haughton to stay with HLA during much of his week of custody, the distance between the residences is not a significant factor. Additionally, the father testified that he will move back to the Shreveport/Bossier area as soon as a management position becomes available with his work.
According to jurisprudence, in order to find that there has been a material change in circumstances warranting custody modification, there must be more evidence of a change in circumstances than was presented in this case. In Lawrence, supra , the mother had no job, GED or high school diploma, and lived in the separate property home of her husband who was two months behind on mortgage payments. The father had a college degree, stable employment and a secure place to live. This Court also found in Lawrence, supra , that while both parents showed an unwillingness to foster and encourage a close relationship with the other parent, the mother exhibited alarming behavior in that regard, which included accusing the stepmother of kidnapping the children from school and challenging the father's authority when in the children's presence. The mother would also go to the children's school during the father's weeks of custody. When the children were riding the bus to the father's home, the mother would sit in the yard so the kids would see her, ensuring that the children had a difficult adjustment to the custody schedule. This Court noted that the father had a calmer approach in dealing with the mother and awarded joint custody with the father as domiciliary parent.
In Chandler, supra , the trial court found that there had been a material change in circumstances warranting custody modification in favor of the mother, which this Court upheld. The father in Chandler was unwilling to meet his child support obligations, was voluntarily underemployed, lived in a small one-bedroom apartment after allowing the marital home to go into foreclosure because he did not pay the note for 18 months, filed for bankruptcy, refused to take his medication for bipolar disorder, left the two young children unsupervised, was uncooperative with the mother regarding the children's school and homework, and he was inappropriately not concerned about the children's medical and dental needs, even refusing to replace his son's broken glasses for several months and failing to keep the children covered by medical insurance. This Court upheld the trial court's decision that equal physical custody was no longer in the children's best interest.
In the case sub judice , the mother wants to modify custody to an arrangement that she knows is unfeasible for the father given his work schedule. The trial court wisely determined that the problems that have arisen between the parents are due to a lack of communication. We agree with the trial court that the court should not disrupt HLA's custody schedule without more clear evidence that suggests a need for change. The trial court was correct in setting *501 this case for a six month review to determine HLA's progress with week on-week off custody. HLA has been through a year of school and the trial court will be able to determine if there is any further need for modifying HLA's week on-week off custody. This assignment of error lacks merit.
Domiciliary Parent
The mother argues that the trial court should have assigned a domiciliary parent because it is mandated by the law. The father argues that Louisiana law does not require the courts to name a domiciliary parent in custody cases. La. R.S. 9:335B(1) provides that in a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown. In this case, there was an implementation order. However, given the communication issues the trial court noted between the parents, it is in the best interest of HLA that a domiciliary parent be fixed. Therefore, we reverse in part and remand to the trial court to make a determination of which parent would best serve as HLA's domiciliary parent.
CONCLUSION
For the foregoing reasons we affirm in part, reverse in part and remand the case to the trial court for review and a determination of a domiciliary parent. Costs are assessed one-half to each party.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED.

At the time of the custody modification hearing, the mother had decided not to move.

Ms. Booker's report is discussed on the record, but it was not entered into evidence.

The stepfather testified that he did not remember the specific charge, whether it was possession of methamphetamine or possession with intent to distribute. The stepfather testified that he was arrested with 16 people; 37 pounds of methamphetamine and $280,000 in cash were seized at the same time. He further testified that he was sentenced to 178 months on the drug charge.

A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:
(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
(2) The love, affection, and other emotional ties between each party and the child.
(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(7) The moral fitness of each party, insofar as it affects the welfare of the child.
(8) The history of substance abuse, violence, or criminal activity of any party.
(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.
(10) The home, school, and community history of the child.
(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.
(13) The distance between the respective residences of the parties.
(14) The responsibility for the care and rearing of the child previously exercised by each party.