Judgment rendered July 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,521-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SALLY LAINE MCLAREN                    Plaintiff-Appellant

versus

JOSEPH CLAY CHILDRESS                  Defendant-Appellee

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 39368

Honorable Jacque Derr, Judge

* * * * *

LAW OFFICE OF GARY D. NUNN            Counsel for Appellant
By:  Gary D. Nunn


MURCHISON and MURCHISON, L.L.C.       Counsel for Appellee
ATTORNEYS AT LAW
By:  Robert C. Owsley


* * * * *

Before STONE, COX, and STEPHENS, JJ.

**STONE, J.**

This is a child custody matter concerning the minor child IMC, who was born in mid-2005. Sally L. McLaren ("Ms. McLaren") is IMC's mother and is the appellant in this case. Joseph C. Childress ("Mr. Childress") is IMC's father and is the appellee herein. (Ms. McLaren and Mr. Childress are collectively referred to as "the parties"). They have litigated this matter in two different Louisiana district courts, the Eighth Judicial District Court ("8th JDC") in Winn Parish, and the Tenth Judicial District Court ("10th JDC") in Natchitoches Parish, and established a custody arrangement pursuant to a consent decree. Ms. McLaren petitioned the 8th JDC to modify that custody arrangement, and, after trial, that court denied her petition. She now appeals, seeking to have that decision overturned, and to have Dr. Darla Gilbert's fee for testifying taxed as court costs on the ground that she testified as an "expert." Mr. Childress filed a brief opposing the appeal.

For the reasons stated hereinafter, we affirm the trial court's judgment.

## PROCEDURAL HISTORY

Since shortly after IMC's birth, Ms. McLaren and Mr. Childress have had several bouts of litigation regarding custody. The subject consent decree is actually the third in a series of consent decrees between the parties. They first entered into a consent decree and joint custody plan on August 18, 2006, in the 8th JDC. On September 9, 2015, they entered an interim custody arrangement pursuant to a consent decree in the 10th JDC. The latter consent decree provided additional custodial time to Mr. Childress, essentially granting him custody 50% of the time. Specifically, it established a two-week rotation due to Mr. Childress' "2 weeks on, 2 weeks off" work

schedule. It also provided that the parties would maintain family counseling with Robin Miley in Natchitoches, Louisiana. On July 15, 2016, the judge in the 10th JDC signed another judgment giving indefinite effect to the 14-day rotation that had been established in the September 9, 2015 interim consent decree. The July 15, 2016, judgment also ordered the parties to continue their co-parenting counseling with Robin Miley,[1] and ordered that she prepare an updated report for an upcoming hearing on August 1, 2016. At that hearing, the parties only raised the issue of whether IMC would continue going to St. Mary's school in Natchitoches. Roughly 18 months later, on March 28, 2018, the 10th JDC signed a judgment ordering that IMC continue to attend St. Mary's.

On August 1, 2018, Ms. McLaren filed a petition to modify custody in the 8th JDC in Winn Parish, Louisiana. Specifically, she requested that she be given custody of IMC during the school weeks and every other weekend, and that IMC be transferred from the private St. Mary's in Natchitoches to the public Atlanta School in Winn Parish. She alleged the following "material" changes in circumstances as justifying the requested modification: (1) IMC's father was working a "2 weeks on, 2 weeks off" schedule at the time the existing arrangement was established; his schedule since changed to "3 weeks on, 3 weeks off," and he is working out of state; (2) IMC is more suited to attend Atlanta High School and be under their "504 plan" because St. Mary's cannot provide the same accommodations; (3) Ms. McLaren has another child who attends Atlanta High School; (4) IMC is having "major problems" at St. Mary's; (5) Misty Childress, IMC's

---

[1] Ms. McLaren took issue with Robin Miley's counseling methods. See n.2, *infra*.

stepmother, has "created problems" with IMC; (6) IMC is having "extreme difficulty" with the existing custody arrangement due to the "extended time" spent at his father's home.

The trial on Ms. McLaren's petition to modify custody took place on April 3 and July 11, 2019. The trial court rendered judgment (with incorporated written reasons) denying Ms. McLaren's petition and taxing costs equally between the parties.

In this appeal, Ms. McLaren asserts that the trial court erred in: (1) denying modification of the custody arrangement; (2) not assessing the costs of Dr. Darla Gilbert's fees for her testimony as court costs; (3) considering Dr. Simoneaux's report even though it was not introduced into evidence and Dr. Simoneaux was not called as a witness.

**EVIDENCE**

The following paragraphs provide a summary of the evidence from the trial.

**Logistical matters**

IMC attended Atlanta School in Winn Parish through the fall semester of second grade. Thereafter, he moved to Natchitoches and attended Weaver Elementary School there. IMC has since progressed to St. Mary's Academy, a different school in Natchitoches, where he has been for the last five years.

Mr. Childress lives in Natchitoches, near St. Mary's, and has done so since IMC was born. When IMC transferred to Weaver, Ms. McLaren moved to Natchitoches also, but then moved back to Winn Parish, a significant distance from IMC's school in Natchitoches. Thus, during her custodial periods, she has to drive approximately 45 to 50 minutes each way to bring IMC to school.

**Anxiety, Depression, and Insomnia**

IMC did not testify at the trial. The evidence adduced at trial diverged greatly regarding IMC's mental health situation. In sum, Ms. McLaren – primarily through her own testimony – painted a dire picture of IMC's anxiety-driven behavior. Mr. Childress' testimony, along with other evidence submitted on his behalf, did not do so.

Specifically, Ms. McLaren testified that, while staying at her house, IMC has such great anxiety that he stays awake almost all night crying and pacing around the house. As a result, he only sleeps approximately six hours per week. This lack of sleep, she asserted, makes it difficult to get IMC out of bed in time for school. She further testified that IMC, a 13-year-old, only sleeps well at her house when he gets in the bed with her and her husband Richard Pitts ("Mr. Pitts"). Mr. Pitts stated that IMC sleeps in the bed with them sporadically, around one to three times per month.

Ms. McLaren further testified – in great detail – that IMC's anxiety causes him a secondary medical problem of an extremely embarrassing nature. She even supplemented that testimony with photographs as exhibits. For IMC's sake, this court will not state what that problem is. We find it highly regrettable that Ms. McLaren has made the exact details of this problem a matter of public record. [2]

---

[2] Additionally, the evidence at trial showed a troubling pattern on the part of Ms. McLaren. Mr. Childress' testimony indicated Ms. McLaren (1) vociferously disagreed with Robin Miley's methods in providing co-parenting counseling to the parties. Ms. McLaren admitted her disagreement with Robin Miley's methods on cross-examination.

Additionally, in her own testimony, Ms. McLaren (2) accused the principal of St. Mary's Academy of lying "a lot" while she (the principal) testified in this case; (3) said that IMC's stepmother, Misty Childress, is "the worst," and accused Mrs. Childress of "emotionall[y] abus[ing]" IMC; and (4) accused IMC's teacher of "tortur[ing]" and "embarrass[ing]" IMC by merely asking IMC in front of the class why he did not ask for his makeup work after missing class. The trial court would not have been manifestly erroneous to conclude that the matters mentioned in this footnote, along with Ms.

Finally, Ms. McLaren and Mr. Pitts testified that IMC's anxiety is at its worst when he first arrives from living at Mr. Childress' residence, and when the time for him to go back there nears. She testified that on one particular morning when she was dropping him off at school he refused to get out of the car because he would be going back to Mr. Childress' house that night; she testified that IMC was so resistant that one of the school's coaches had to come and physically remove him from her vehicle.

The testimony of Mr. Childress and his wife, Misty Childress, starkly differed from that of Ms. McLaren and Mr. Pitts. Both Mr. Childress and Mrs. Childress testified that IMC does not stay up all night pacing, and does not have the anxiety-driven medical problem when living at their residence. Mrs. Childress testified that she would know if IMC was awake all night pacing because she has a three-year-old with serious medical problems in the bedroom next door to IMC's bedroom, and that the baby monitor would let her know if IMC was up pacing. Additionally, she gets up at 4:30 AM to go to work, and thus would be aware of IMC being awake that late. Mrs. Childress also testified cogently as to her basis for knowing that IMC does not suffer from the aforementioned anxiety-driven medical problem while living with her and Mr. Childress. Mr. and Mrs. Childress also testified that IMC is well-behaved and respectful.

**Dr. Gilbert's testimony**

In August of 2018, IMC began regularly seeing Dr. Darla Gilbert for treatment of clinical depression and anxiety disorder.[3] He has continued

---

McLaren's willingness to make IMC's embarrassing, private medical problems a matter of public record, represents a troubling pattern on the part of Ms. McLaren.

[3] Ms. McLaren's attorney in this matter referred her to Dr. Gilbert to have IMC's anxiety and depression issues addressed. IMC's regular treatment with Dr. Gilbert began right around the time that this lawsuit was filed.

those treatments at least to the time of trial. Dr. Darla Gilbert testified at trial, and Ms. McLaren, in her brief, relies predominantly on that testimony as support for the contention that the proposed modification is in IMC's best interest. Dr. Gilbert is a Ph.D. psychologist, a licensed professional counselor, and a licensed marriage and family therapist. The trial court explicitly declined to admit her as an "expert," but did allow her to offer fact and opinion testimony based on her treatment of IMC. At trial, she was sequestered to prevent her from hearing the testimony of other witnesses.

Dr. Gilbert stated that IMC has severe anxiety and clinical depression for which she is treating him. Dr. Gilbert did not make this diagnosis herself; this diagnosis was made by nurse practitioner Alicia McGlothlin. Dr. Gilbert stated that external factors do not cause these conditions, but can make them worse. On January 9, 2019, Alicia McGlothlin prescribed Abilify to help with his insomnia, anxiety and depression. The Abilify seemed to be helping IMC, but he stopped taking it after one month. Dr. Gilbert believes that IMC's concern regarding Abilify's possible side effects is the reason that IMC stopped taking it. She seemed to blame this decision by IMC on Mr. Childress reviewing the side effects with IMC. Dr. Gilbert testified that IMC should keep taking the Abilify because it "obviously helps him." According to Dr. Gilbert, IMC needs bimonthly counseling and needs to be under the care of a nurse practitioner or physician for his depression medication.

Dr. Gilbert testified that IMC told her that he is more comfortable around his mother, and would rather live with her and attend Atlanta School. According to Dr. Gilbert, IMC also stated that he is uncomfortable around his father and does not want his father to know about his anxiety and

6

depression. Dr. Gilbert also stated that IMC also said that he does not like St. Mary's school.

In culmination, Dr. Gilbert testified that Ms. McLaren should be given domiciliary status and Mr. Childress should have "generous visitation." She predicted that, without this modification, IMC will further decline.

However, on cross-examination, Dr. Gilbert admitted that it was Ms. McLaren who hired her, and that Ms. McLaren had been referred to her by her attorney in this matter, Mr. Gary Nunn. Dr. Gilbert admitted that, although IMC had said he wanted to go to Atlanta School, he had never given a reason why. She also agreed that IMC really does not know what he would be getting himself into in transferring to a new school. She further admitted that Abilify would help IMC regardless of where he goes to school.

Mr. Childress testified that he did not pressure IMC to stop taking the Abilify, and that the only time he reviewed the possible side effects with IMC was when he did so jointly with IMC and Alicia McGlothlin during an office visit. He further stated that he had initially asked Dr. Gilbert why IMC had been prescribed Abilify, and she had only said that it was to help IMC sleep; she directed him to speak with Alicia McGlothlin, the prescriber, about it if he wanted to discuss further.

**Academic matters**

In her brief to this court, Ms. McLaren argues that one reason supporting her requested modification is that IMC would do better at Atlanta School because it has a "504 plan" to accommodate children with special needs, whereas St. Mary's (IMC's current school) does not. This contention is contradicted by the evidence adduced at trial.

7

IMC struggles in math. His teachers testified that the reason IMC makes poor grades is that he neither does his in-class work, despite extended time, nor his homework. Also, Mr. Childress introduced a record of IMC's scores in his math class, which showed he was performing at an 80% rate on his in-class tests, but had many zero grades for homework he had not done.

The 504 plan expert at Atlanta School, Susan Carter, testified that the 504 plan could not help if the student did not do his homework. St. Mary's officials testified that St. Mary's provides the same accommodations as a 504 plan, but they do not call it a 504 plan because St. Mary's is a private school. Faced with this reality, Ms. McLaren admitted in her testimony that placing IMC in Atlanta School's "504 plan" would not cause IMC to start doing his homework.

Mr. Childress introduced a report card of IMC's from 5 or 6 years earlier when he attended Atlanta School last, in the second grade. IMC's grades on that report card were: A, B, C, D, and F. Ms. McLaren agreed that IMC's grades were "terrible" the last year he attended Atlanta school, and that his grades at St. Mary's during the last school year were actually improving.

Furthermore, Misty Childress also made a demonstrative exhibit correlating IMC's absences and tardies with Mr. Childress's work schedule. It showed that IMC had 6 unexcused absences, 5 unexcused tardies, and was checked out 3 times without excuse while in Ms. McLaren's custody; while in Mr. Childress' custody, IMC had zero unexcused absences, zero unexcused check outs, and 2 unexcused tardies.

Finally, on cross-examination, the following question was put to Dr. Gilbert: Would a move to Atlanta School be an improvement for IMC? Her answer: "It might help and it might not. I don't know."

## TRIAL COURT'S FINDINGS OF FACT AND REASONS FOR JUDGMENT

The trial court denied modification of the custody arrangement, and on August 6, 2019, issued judgment accordingly, with incorporated written reasons. In its written reasons, the trial court specifically found that Ms. McLaren had failed to prove that the existing custody arrangement "is not in IMC's best interest," *i.e.*, that her proposed modification *is* in IMC's best interest. The trial court also made specific findings that: (1) IMC's anxiety and depression are not caused by the present custody arrangement; (2) Mr. Childress is not to blame for IMC's discontinuation of the Abilify (prescription mood stabilizing medication); (3) that changing schools would not cure IMC's anxiety and depression, especially given that IMC has already been attending St. Mary's for 5 years, and is involved in the football and golf programs there; (4) IMC's academic problems "all" arise from the fact that he does not do his homework, and (5) being in a 504 plan would not cause IMC to start doing his homework.

## ANALYSIS

**Denial of modification**

*Evans v. Lungrin,* 97-0541 (La. 2/6/98), 708 So. 2d 731 establishes the burden of proof applicable to a petitioner seeking modification of a child custody arrangement established by consent decree.[4] The petitioner must

---

[4] The heavy burden of proof enunciated in *Bergeron v. Bergeron,* 492. 2d 1193 (La. 1986) is inapplicable in cases where the subject custody decree is a stipulated

9

prove that: (1) a material change in circumstances materially affecting the welfare of the child has occurred since the existing decree; and (2) the proposed modification would be in the best interest of the child.

A trial court's findings of fact concerning a petition to modify custody is subject to manifest error review. *Id.* "Under that standard, the reviewing court must determine whether the [factfinder's] inferences and conclusions are reasonable in light of the record. If so, the court may not reverse, even if convinced that it would have weighed the evidence differently." *McDonald v. City of Bastrop,* 2019-01949 (La. 2/26/20), 289 So. 3d 1029.

Additionally, the trial court's ultimate decision on the matter is subject to abuse of discretion review. *Lawrence v. Lawrence*, 49, 373 (La. App. 2 Cir. 8/13/14), 147 So. 3d 821.

*Lawrence, supra,* held that dysfunctionality of an existing consent decree can constitute a "material change of circumstances" for purposes of determining whether the petitioner has carried his or her burden of proof. In *Lawrence*, the parties had litigated extensively under the existing consent decree, including multiple motions for contempt and petitions to modify custody over a period of approximately 3 years.

La. C.C. art. 134 requires the court, in determining the best interest of the child, to consider all relevant facts, including 14 factors enumerated in the article.

The trial court's specific findings of fact, listed *supra*, are well supported by the evidence in the record. Given those facts, and Dr. Gilbert's

---

judgment (consent decree) and no evidence of parental fitness is taken. *Lawrence v. Lawrence,* 49, 373 (La. App. 2 Cir. 8/13/14), 147 So. 3d 821. Rather, *Bergeron* applies when a party seeks to modify a considered decree of child custody, *i.e.*, a judgment rendered upon a trial on the merits.

10

testimony that Abilify would help IMC regardless of which school he attends, we agree with the trial court that Ms. McLaren failed to prove that her proposed modification to the custody arrangement is in IMC's best interest. Furthermore, we find that Mr. Childress' work schedule changing from "2 weeks on, 2 weeks off" to "3 weeks on, 3 weeks off" does not constitute a material change in circumstances affecting IMC's welfare. This assignment of error lacks merit and is rejected.

**Dr. Simoneaux's report**

Ms. McLaren argues that the trial court erred in considering Dr. Simoneaux's report concerning IMC, Mr. Childress, and Ms. McLaren because it was not introduced into evidence – and Dr. Simoneaux did not testify at the trial. In rebuttal, Mr. Childress cites the trial court's statement during the trial that Dr. Simoneaux's report would have no effect on his decision.[5]

We addressed a similar situation in *Fox v. Reynolds Indus. Contractors,* 44,938 (La. App. 2 Cir. 1/27/10), 33 So. 3d 895, *writ denied,* 10-0676 (La. App. 2 Cir. 1/27/10), 36 So. 3d 250. In *Fox*, manifest error was the applicable standard of review, and the trial court potentially considered material not in evidence in making its decision. We proceeded by determining whether the trial court's decision was manifestly erroneous based *solely* on the evidence introduced for trial, *i.e.*, without any support from the material not introduced in evidence. *Id.* at 900-901; n.2.

---

[5] Additionally, Mr. Childress correctly points out that Ms. McLaren failed to timely object when the trial court accepted testimony regarding Dr. Simoneaux's report, and then only objected on the ground of the "best evidence" rule, *i.e.*, that the document speaks for itself – not that such testimony was inadmissible because the report was not in evidence.

In this case, we use the same as analysis as in *Fox, supra*. Ms. McLaren is correct that the trial court's consideration of a document not in evidence constitutes error. However, the evidence *introduced at trial* easily supports the trial court's decision, even without the testimony relating to Dr. Simoneaux's report. Furthermore, the trial court explicitly indicated that Dr. Simoneaux's report would have no bearing on its decision. Accordingly, this assignment of error lacks merit and is denied.

**Taxing of Dr. Gilbert's fees as court costs**

Ms. McLaren argues that the trial court erred in not taxing Dr. Gilbert's fees for her testimony as court costs. In support, Ms. McLaren cites La. C.C.P. art. 1920, La. R.S. 13:4533 and La. R.S. 13:3666 as entitling her to have Dr. Gilbert's fees for her testimony taxed as costs of court. In opposition, Mr. Childress correctly points out that Dr. Gilbert was not accepted as an expert. He cites the portion of the record wherein Dr. Gilbert was sequestered (as a fact witness), and where the trial court declined to designate Dr. Gilbert an expert.

La C.C.P. art. 1920 provides:

> Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
> Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

La. R.S. 13:4533 states:

> The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.

La. R.S. 13:3666, in relevant part, provides:

> A. Witnesses called to testify in court *only* [i] to an opinion founded on special study or experience in any

branch of science, or [ii] to make scientific or professional
examinations, and to state the results thereof, shall receive
additional compensation, to be fixed by the court, with
reference to the value of time employed and the degree of
learning or skill required.
B. The court shall determine the amount of the fees of said
*expert* witnesses which are to be taxed as costs to be paid
by the party cast in judgment. (Emphasis added).

The record reflects that Dr. Gilbert did not testify as an expert witness. The trial court explicitly declined to designate her an expert, and sequestered her as a fact witness. Moreover, she testified both as to her opinion *and to facts,* which removes her from the category of witnesses defined in La. R.S. 13:3666(A), *supra*. Therefore, the trial court was correct in not taxing Dr. Gilbert's fees as court costs. This assignment of error is denied.

## CONCLUSION

The judgment of the trial court is AFFIRMED. All costs of this appeal are taxed to Ms. McLaren.